Lee DOUGLASS, Commissioner of the Insurance Department for the State of Arkansas *v.* DYNAMIC ENTERPRISES, INCORPORATED d/b/a Car-Mart

93-663                                              869 S.W.2d 14

Supreme Court of Arkansas
Opinion delivered January 24, 1994
[Rehearing denied March 7, 1994.*]

*Corbin, J. not participating.

*Cynthia L. Uhrynowycz*, for appellant.

*J. Scott Greear*, for appellee.

Tom Glaze, Justice. This case presents an issue of first impression regarding whether a debt cancellation contract is insurance as defined by the Arkansas Insurance Code. Following administrative procedures which resulted in the determination by the Insurance Commissioner that the contract was an insurance product, Dynamic Enterprises, Inc. appealed to the Pulaski County Circuit Court pursuant to Ark. Code Ann. § 23-61-307 (Supp. 1993). The circuit court reversed the Commissioner, and held that contracts of debt cancellation are not insurance. The Commissioner appeals from that order. Because we find that Dynamic's debt-cancellation contract is insurance under the law of Arkansas, we reverse and remand.

Dynamic is a used-car dealership which finances the sale of its vehicles to purchasers. As part of its sales, Dynamic proposed to offer an additional contract, entitled "Total Loss-Vehi-

cle Purchase Contract Waiver", which could be purchased for a weekly or monthly fee. The contract is one of debt cancellation, and provides that Dynamic will extinguish the outstanding debt on a vehicle purchased and financed through it, if the vehicle is wrecked and totalled, or stolen through no fault or negligence of the purchaser. Further, the contract provides the purchaser with the option of applying the salvage value of the "lost" vehicle to the purchase price of another vehicle from Dynamic. Dynamic, under the contract, determines whether a vehicle is a "total loss."

While normally this court's standard of review of a circuit court sitting without a jury is whether the findings are clearly erroneous, review of administrative agency decisions by both the circuit court and this court is limited in scope. The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, and the construction of a statute by an administrative agency is not overturned unless it is clearly wrong. In addition, the court will not substitute its judgment for that of the agency unless the agency's decision is arbitrary and capricious. And finally, the evidence is given its strongest probative force in favor of the agency's ruling, and this court may not reverse the agency's decision if there is any substantial evidence to support its decision. *Brimer* v. *Arkansas Contractors Licensing Board*, 312 Ark. 401, 849 S.W.2d 948 (1993).

Ark. Code Ann. § 23-60-102(1) (1987) defined insurance as "a contract whereby one undertakes to indemnify another or pay a specified amount or provide a designated benefit upon determinable contingencies[.]"[1] In *West & Co. of La., Inc.* v. *Sykes*,

---

[1]During appeal of this case, the definition of insurance was amended to § 23-60-102 (Supp. 1993) which presently reads:

(1)(A)(i) "Insurance" is any agreement, contract or other transaction whereby one party, the "insurer", is obligated to confer benefit of pecuniary value upon another party, the "insured" or "beneficiary", dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event.

(ii) A "fortuitous event" means any occurrence or failure to occur which is, or is assumed by the parties to be adversely affected by the happening of such event.

(B) "Insurance" shall, for purposes of subtitle 3 of title 23, be deemed to include "annuities", which are agreements by insurer to make periodic payments that continue during the survival of the measuring life or lives under the agreements or for a specified period.

257 Ark. 245, 515 S.W.2d 636 (1974), the court identified an analysis in determining whether a particular contract or activity constitutes the business of insurance, and in doing so, set out the following determinative factors: (1) whether the plan is mandatory, (2) whether a profit motive exists in offering the plan, and (3) whether the plan is intended to be actuarially sound. At issue in West was an employer's plan to self-insure its employees for medical expenses which this court found was not an insurance product within the Insurance Code. In *City of Marianna v. Ark. Municipal League*, 291 Ark. 74, 722 S.W.2d 578 (1987), the court cited the analysis in *West*, but found the determinative factor was whether there was a lack of profit motive.

Here, the Commissioner argues that Dynamic's sole motive for offering the cancellation contract is profit. The Commissioner points to the fact Dynamic's debt cancellation contract is similar to a policy issued by American Pioneer Insurance, a qualified, regulated insurer, for whom Dynamic had previously marketed its policy. American Pioneer offered its policy to make a profit, and the Commissioner suggests Dynamic, too, stands to gain monetarily from the sale of its contracts. The record certainly seems to support the Commissioner's position since Dynamic proposed to charge its customers two dollars per week for the contract and estimated it would receive an annual sum of $416,000.[2] Further, the Commissioner argues the terms and provisions associated with insurance are contained within Dynamic's contract, and that this would lead the consumer to believe he was purchasing an insurance policy. We find the Commissioner's arguments persuasive in finding that Dynamic's motive is the expectation of profit.

The Commissioner cites a number of cases from other states where debt-cancellation contracts have been found to be analogous to credit-life policies, and thus insurance products within those states' definition of insurance. Review of these cases, as well as others, demonstrates that generally contracts with debt-cancellation clauses have been considered contracts of insurance, and thus invalid, when: (1) the cancellation clause is mandato-

---

[2] Dynamic's administrative assistant testified that administrative costs would be deducted, but offered no suggestion that Dynamic would not make any profit from the sale of these contracts.

ry, (2) the purchaser pays a fee for inclusion of the clause, (3) profit-making by the vendor is a major reason for including the clause, (4) risk of loss is placed on the purchaser, and (5) the vendor is not licensed or authorized to be in the business of insurance. *See Ware* v. *Heath*, 237 S.W.2d 362 (Tex. Civ. App. 1951) (mandatory clause inserted as a pretext for increasing the allowable amount of interest); *Kansas* v. *Anderson*, 195 Kansas 649, 408 P.2d 864 (1966) (clause found to be incidental to the real purpose of the contract); *Attorney General* v. *C.E. Osgood Co.*, 144 N.E. 371 (Mass. 1924) (cancellation of debt is equivalent to the payment of money by giving the purchaser title to the property upon cancellation). Although not all of the factors listed above have been cited in any one case, we find these factors relevant to our evaluation, but not all are equally determinative.

Here, Dynamic offers debt cancellation as a separate contract and at the option of the purchaser. Dynamic charges a weekly or monthly fee for the contract, and gambles that total losses within the meaning of its contract will cost it less than the amount of fees collected. Because Dynamic is not authorized to be in the business of insurance, each purchaser assumes the risk that Dynamic will not be able to perform under the contract due to the lack of financial reserves should Dynamic go out of business.[3] If Dynamic should become insolvent before all its cancellation contracts terminate on their own terms, the contract holder assumes the risk that either his vehicle will not be "lost" or that, if "lost", he will forfeit the amount paid for the cancellation contract. Significantly, if Dynamic becomes insolvent, the contract holder will have lost his opportunity for a setoff on the purchase price of another vehicle from Dynamic equal to the salvage value of his "lost" vehicle.

In conclusion, we take note of Dynamic's reliance on *First National Bank of Eastern Arkansas* v. *Taylor*, 907 F.2d 775 (8th Cir. 1990). There, the district court held the National Bank Act protected the First National Bank's authority to enter debt cancellation contracts, and the contracts did not constitute the "business of insurance" under the McCarran-Ferguson Act. We agree with the Commissioner that this decision is narrowly limited, and involves a federal activity and a matter of federal law. While per-

---

[3]The Arkansas Department of Insurance requires the deposit of adequate financial reserves by regulated insurers.

suasive, we do not find federal decisions authoritative in cases involving interpretation of state law.

██ For the reasons stated, we find that the evidence is substantial to support the Commissioner's decision that the debt cancellation contract offered by Dynamic is an insurance product under the Insurance Code.

Reversed and remanded.