The Honorable Phillip T. Jacobs State Representative 819 Miller Street Clarksville, AR 72830-2239
Dear Representative Jacobs:
This letter is in response to your request for an opinion regarding whether the employees of a non-profit, "educational/habilitative" facility that provides services to developmentally delayed adults and children may be eligible for state health insurance and retirement benefits. You have indicated that the facility is a 501-C non-profit organization licensed by the Department of Human Services, Division of Developmental Disabilities (DDS), as well as the Department of Education. By contract with the state, the facility reportedly receives both DDS and Social Services Block Grant funding. You have not indicated the amount of such funding or the proportion it bears to the facility's entire budget.
The question you have posed is as follows:
 Since the facility is licensed by and has a contract with the state, are its employees eligible for retirement benefits and state health insurance?
RESPONSE
It is my opinion that under the circumstances you have stated, the facility's employees are ineligible for either retirement benefits or state health insurance.
Retirement Benefits
Eligibility for state retirement benefits under the Arkansas Public Employees' Retirement System (APERS) is set forth at A.C.A. § 24-4-101 etseq. In order to qualify for participation in APERS, an employer must be a "public employer" — a term defined by statute as "the State of Arkansas or any participating public employer." A.C.A. § 24-4-101(4). In your request, you identify the facility as "a 501-C non-profit organization," which I interpret to mean a private corporation. A.C.A. § 4-34-101 etseq. sets forth a procedure for converting a facility of the sort you describe from a private to a public habilitative service corporation. Undertaking this conversion would be a prerequisite for potential eligibility to participate in APERS.
Assuming the facility undertakes this conversion, the question remains whether it qualifies as a "participating public employer." The Code defines this phrase as follows:
 (A) Any county, municipality, rural waterworks facilities board, regional airport authority, public facilities board, regional solid waste management board, joint county and municipal sanitation authority, or regional water distribution board in the state whose employees are included in the membership of the system;
 (B) The employees of the Intergovernmental Juvenile Detention Council of the Tenth Judicial District who are included in the membership of the system; or
 (C) A rehabilitative services corporation or local unit of government as provided for in § 24-4-746.
(Emphasis added.)
Given this definition, it appears that the only potential basis for classifying the facility in this case as a "public employer" would be if it qualified as a "rehabilitative services corporation or local unit of government" under subsection (C) recited above. I do not believe the facility would qualify as a "rehabilitative services corporation" because the Code expressly distinguishes between a "rehabilitative" facility and a "habilitative" facility:
4-34-101. Rehabilitative services corporations.
 (a) There is authorized the creation of rehabilitative services corporations.
 (b) A rehabilitative services corporation shall be a public body and a body corporate and politic.
 (c) A rehabilitative services corporation shall be organized to assist the state in carrying out specialized and regular rehabilitative services for Arkansans in need of rehabilitative services.
History. Acts 1999, No. 880, § 1.
4-34-102. Habilitative services corporations.
 (a) There is authorized the creation of habilitative services corporations.
 (b) A habilitative services corporation shall be a public body and a body corporate and politic.
 (c) A habilitative services corporation shall be organized to provide habilitative services and other services for individuals with special educational or training needs.
History. Acts 1999, No. 880, § 2.
Significantly, the Code authorizes the APERS Board of Trustees to promulgate rules and regulations for participation only by "employers defined as rehabilitative service corporations, under the provisions of § 4-34-101 and such local units of government as are provided for under the Code." A.C.A. § 24-4-746. Conspicuously absent from this statute is any direct reference to habilitative service corporations — an omission that in itself suggests a legislative intent to distinguish between the two categories and afford benefits only to the former.
The question nevertheless remains whether a habilitative services corporation might qualify as a "local unit of government." In my opinion it does not. The fact that both A.C.A. § 24-4-746 and A.C.A. §24-4-101(4) list as separate categories "rehabilitative service corporations" and "local units of government" suggests that the legislature did not consider the former a subset of the latter. It is illogical to assume that a habilitative services corporation could qualify as a "local unit of government" when a rehabilitative service corporation cannot.
Moreover, the definitions of "local unit of government" offered at various points in the Code strongly suggest that the legislature intended that term to apply only to traditional governmental entities. For instance, A.C.A. § 14-16-504 provides that "`local unit of government' means a city, town, or county." Similarly, A.C.A. § 16-105-501 defines the phrase as meaning "a county, city of the first class, city of the second class or incorporated town." Nowhere in the Code or any applicable regulation is there any suggestion that the phrase "local unit of government" applies to an entity that has merely a contractual relationship with the state.
However, the issue is complicated considerably by the Code's defining a habilitative services corporation as "a public body and a body corporate and politic." A.C.A. § 4-34-102. The term "public body" has been consistently applied in the Code to entities that appear clearly to qualify as "units of government." For instance, A.C.A. § 17-33-101
defines the term as "any agency of the State of Arkansas or any political subdivision of the state." Similarly, A.C.A. § 22-9-302 defines the term as "the State of Arkansas or any officer, board, or commission of the state, any county, city, municipality or other political subdivision, or any of the agencies thereof." A.C.A. § 14-188-103 defines the term "state public body" as meaning "any city, town, county, municipal corporation, commission, district, authority, or other political subdivision of this state." A.C.A. § 14-169-203 defines the phrase "state public body" as meaning "any city, town, county, municipal corporation, commission, district, authority, other subdivision, or other public body of the state."[1]
In accordance with such definitions, the Code has expressly identified as "public bodies" such entities as a housing authority, A.C.A. §14-169-211, a rural development authority, A.C.A. § 14-188-109, the Arkansas Development Finance Authority, A.C.A. § 15-5-201, and the State Highway Commission, A.C.A. § 23-12-304. These organizations all might be considered "units of government" insofar as they not only implement but make public policy. By contrast, the facility that prompted your request appears to have only a contractual and license relationship with the state, which is clearly distinguishable from the policy-making oversight functions of the agencies just listed. Consequently, even assuming the facility undertakes the statutory corporate conversion to a "public body and a body corporate and politic," I cannot opine that it would thereby be converted into a "local unit of government" potentially eligible for participation in APERS.
If the facility converts to a "public body" pursuant to A.C.A. § 4-31-101et seq., and further if APERS deems the facility a "local unit of government," the APERS board of trustees may nevertheless deny participation upon a determination that such participation would jeopardize APERS' tax-qualified status, subject the plan to further federal requirements or otherwise detrimentally affect the system. A.C.A. § 24-4-746. I cannot opine on the outcome of such an inquiry, although it may be significant that the participation of rehabilitative services corporations does not appear to have adversely impacted the system.
Assuming the facility qualifies as a participating public employer, it will remain to be determined which of its employees are eligible to receive benefits. A.C.A. § 24-4-101(7)(A)(i)(a) defines "employee" as follows:
 "Employees" means all officers and employees of any office, agency, board, commission, including the Department of Higher Education, or department of a public employer whose compensations were or are payable from funds appropriated by the public employer and all otherwise eligible employees whose compensations were or are payable in whole or part from federal funds, as well as the official court reporters and stenographers of the circuit and chancery courts of the state and all of the prosecuting attorneys of the judicial districts of Arkansas.
Subsections (8) through (11) of this statute further provide detailed definitions of state, non-state, county and municipal employees, again focusing on the source of employee payments. Specifically subsection 8(A) sets forth the following definition:
 "State employees" means all otherwise eligible employees whose compensations were, or are, payable from funds appropriated by the state and includes all employees whose compensations were, or are, payable in whole or part from federal funds.
In my opinion, funds paid the facility under contract cannot be characterized as "appropriated by the state," since a contrary interpretation would render any seller of goods or provider of services to the state a "state employee." However, you have indicated that the facility does receive federal funds. Assuming the facility is deemed a public employer, and further assuming federal funds are devoted in whole or part to payroll, the recipient employees would appear to qualify as "state employees." I will further note that under the statute just recited, the board's decision as to who is an employee is final. A.C.A. § 24-4-101(8)(B).
In summary, it is my opinion that the facility that prompted your request is clearly ineligible for participation in APERS if it has not yet effected the corporate conversion authorized by A.C.A. § 4-31-101 etseq. Assuming it completes the conversion, the facility may be deemed eligible, depending on how APERS construes what I frankly consider to be a confusing statute.[2] In my estimation, the facility's eligibility will turn on the determination whether a habilitative services corporation, as a "public body," is a "local unit of government" — a question I believe should be answered in the negative. If APERS draws a contrary conclusion and grants the facility's application, the question will become which employees, if any, are eligible for benefits. Regardless how the board rules, its determination will carry significant weight in any subsequent challenge. The Arkansas Supreme Court has consistently held that an interpretation given to a statute by the agency charged with its execution is highly persuasive, and while it is not conclusive, neither should it be overturned unless it is clearly wrong.Arkansas State Med. Bd. v. Bolding, 324 Ark. 238, 920 S.W.2d 825 (1996);Douglass v. Dynamic Enterprises, Inc., 315 Ark. 575, 869 S.W.2d 14
(1994); Junction City Sch. Dist. v. Alphin, 313 Ark. 456, 855 S.W.2d 316
(1993); Brimer v. Arkansas Contractors Licensing Bd., 312 Ark. 401, 405,849 S.W.2d 948 (1993); Pledger v. Boyd, 304 Ark. 91, 799 S.W.2d 807
(1990); Arkansas Department of Human Services v. Green Acres NursingHomes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988); Arkansas ContractorsLicensing Bd. v. Butler Const. Co., Inc. of Barling, 295 Ark. 223,748 S.W.2d 129 (1988); Ragland v. Arkansas Writers' Project, Inc.,287 Ark. 155, 697 S.W.2d 94 (1985), reh denied, 287 Ark. 155,698 S.W.2d 802; Morris v. Torch Club, 278 Ark. 285,645 S.W.2d 938 (1983).
Health Benefits
Eligibility for state health benefits is determined by the executive director of the State and Public School Life and Health Insurance Board. A.C.A. § 21-5-401 et seq. The Code simply defines an eligible "employee" as "a state employee or a public school employee." A.C.A. § 21-5-407(2). The term "state" is defined as "the State of Arkansas." A.C.A. §21-5-407(5).
In Brimer v. Arkansas Contractors Licensing, 312 Ark. 401, 405,849 S.W.2d 948 (1993), the Supreme Court set forth the following standard for statutory construction: "Our rule of interpreting statutory language is that we construe a statute just as it reads, giving words their ordinary and usually accepted meaning in common language. City of Hot Springs v.Vapors Theatre Restaurant, Inc., 298 Ark. 444, 769 S.W.2d 1 (1989)." In the present case, the statute unambiguously requires that an individual be either a public school employee or an employee of the State of Arkansas in order to qualify for health benefits. Although I have found no authority further defining the scope of "state employee" as used in this statute, the statute appears perfectly clear: in order to qualify for state benefits, one must be an employee of the State of Arkansas — i.e., on the state payroll. It would strain the clear meaning of language to suggest that a private corporation's employees would fall within the scope of this definition simply because the employer has contracted with the state or because it has accepted grants from the state. It is thus my opinion that the facility's employees are ineligible for state health benefits. I further feel that if the statute were interpreted as extending to the facility's employees, the legislation might invite constitutional attack on the same grounds discussed in footnote 2,supra.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh
[1] The Code at various points uses the related term "public entity," which is typically defined at A.C.A. § 19-2-502 as meaning "state agencies, including all constitutional offices and agencies, boards, and commissions, state institutions of higher education, municipalities, counties, school districts, educational cooperatives, improvement districts, and other public officials or public offices."
[2] This confusion arises primarily from the fact that A.C.A. §4-34-102 defines as "public bodies" institutions whose contractual dealings with the state appear to have a decidedly "private" flavor and which will continue to be treated as private corporations unless they observe the mere formality of filing for conversion. All statutes are presumed constitutional, Stone v. State, 254 Ark. 1011, 498 S.W.2d 634
(1973), and if it is possible to construe an act as constitutional, a court not only may, but should and will do so. Love v. Hill,297 Ark. 96, 759 S.W.2d 550 (1988). Although I am assuming the constitutionality of the statute in this Opinion, this legislation may be assailable on constitutional grounds if a court, after reviewing facts not before me, were to conclude that habilitative services corporations are de facto private, notwithstanding their statutory designation as public. InChandler v. Board of Trustees of the Arkansas Teacher Retirement Systemof the State of Arkansas, 236 Ark. 256, 365 S.W.2d 447 (1963), the Arkansas Supreme Court declared unconstitutional several statutes that permitted employees of the Arkansas Education Association (the AEA) and the Arkansas Teacher Association (the ATA) to participate in the State Teacher Retirement System. The Court concluded that the AEA and the ATA were private organizations, rather than agencies of the state, and that any use of tax dollars to fund its members' retirement offended the Arkansas Constitution's privileges and immunities clause (art. 14, § 3), the illegal exaction clause (art. 16, § 13) and the due process clause (art. 2, § 8).