Mr. John Allen, Director Assessment Coordination Department 1614 West Third Little Rock, AR 72201-1815
Dear Mr. Allen:
You have requested an Attorney General opinion concerning the interaction of Act 1185 of 1999 and Amendment 59 to the Arkansas Constitution.
You have asked:
 (1) Is there an incongruence between the "rollback" provision of Amendment 59 (and its implementing legislation) and the three-year "incremental phasing in" provision of Act 1185 of 1999?
 (2) If the answer to Question 1 is affirmative, and in the absence of existing clear legislative direction, does the Assessment Coordination Department have the responsibility and authority to devise a uniform method of application of the two provisions that will be most consistent with the intent and letter of each provision, even though not in perfect compliance?
RESPONSE
Question 1 — Is there an incongruence between the "rollback" provision ofAmendment 59 (and its implementing legislation) and the three-year"incremental phasing in" provision of Act 1185 of 1999?
As an initial matter in answering this question, I must note that I understand your use of the word "incongruent" to describe a state of affairs in which compliance with either of the two laws would defeat the purpose of the other law.[1] Given this understanding of the word "incongruent," as you have used it, it is my opinion that these laws can lawfully be interpreted and administered in a manner that is not incongruent. I acknowledge that the language of the two laws does make them susceptible to being interpreted and administered in a manner that would produce incongruent results; nevertheless, it is my opinion that the Assessment Coordination Department has the authority to develop a means of implementation of the two laws that would serve the purpose of both laws. This conclusion is explained more fully below.
As you note in your correspondence, Act 1185 of 1999 [codified at A.C.A. § 26-26-1901 et seq.] requires that after a county-wide reappraisal, all increases in property value are to be added to the tax rolls in increments of 33.3% over three years. See A.C.A. § 26-26-1902. That is, a value increase of 33.3% of the total increase reflected by the reappraisal is to be added in each of the three years following the reappraisal. Amendment 59 and its implementing legislation provide that in instances where a countywide reappraisal would result in an aggregate increase in property values of 10% or more over the previous year, a millage rate reduction will be allowed so as to assure that no taxing unit will receive an amount greater than 10% above the revenues received during the previous year.
The concern about a possible incongruence between Amendment 59 and Act 1185 arises out of the fact that under Act 1185, property values will increase in each of the three years following reappraisal, whereas Amendment 59 and its implementing legislation seem to contemplate only a one-time rate reduction ("rollback") after reappraisal. The implementing legislation of Amendment 59 was not amended to reflect the fact that under Act 1185 property values will increase in the three years following reappraisal, and not just in one year.[2] As a result, there is now confusion as to how to calculate the rollback so as to accommodate the purpose of the incremental property value increases, while at the same time serving the purposes of Amendment 59. Various methods of calculation of the rollback could be utilized. Some of these methods could have the effect of defeating the spirit and purpose of one or the other of these laws by causing either a dramatic shortfall in revenues for taxing units, or a dramatic increase in taxes for property owners. You have attached to your opinion request documents illustrating various methods of calculating the Amendment 59 rollback in the context of Act 1185, and illustrating the divergent effects of these methods. You have also attached a suggested method of calculation which you indicate you believe will best serve the purposes of both laws. You have not asked about the legality or permissibility of any of the specific methods of calculation that you provided for my review. I also note that your suggested method has not been formalized as a Department regulation. For these reasons, I will not address the legality or permissibility of any of the methods contained in the attached documents. Rather, I will address the more fundamental issue of the Department's authority to formulate a method of implementation of the two laws.
It is my opinion that the Assessment Coordination Department has the authority to choose a method of interpreting and administering the provisions of Amendment 59 (and its implementing legislation) and Act 1185 that would best serve the spirit and purposes of these laws.
The language of Amendment 59, of its implementing legislation, and ofAct 1185 of 1999 does not mandate a particular method of application. Moreover, the language of these laws is broad enough to support any number of methods of application, all of which could be in compliance with these laws. The Assessment Coordination Department has been explicitly granted the authority to determine the specific manner in which these laws are to be administered. This authority is explicitly stated in various statutory sections.
For example, A.C.A. § 26-24-102 states:
 The Arkansas Public Service Commission[3] shall have the full power and authority in the administration of the tax laws of this state to have and exercise general and complete supervision and control over:
 (1) The valuation, assessment, and equalization of all property, privileges, and franchises; and
 (2) The several county assessors, county boards of review and equalization, and other officers charged with the assessment or equalization of property taxes throughout the state, to the end that all assessments on property, privileges, and franchises in this state shall be made in relative proportion to the just and true value thereof, in substantial compliance with the law.
A.C.A. § 26-24-102.
Similarly, A.C.A. § 26-24-105 states:
 The Arkansas Public Service Commission[4] shall have the full power and authority in the administration of the tax laws of this state to confer with, advise, and direct all assessors, county boards of review and equalization, county judges, county clerks, and collectors of state and county taxes concerning their duty with respect to the revenue laws of this state.
A.C.A. § 26-24-105.
Moreover, A.C.A. § 26-24-107 states:
 The Arkansas Public Service Commission[5] shall have the full power and authority in the administration of the tax laws of this state to:
 (1) Prescribe from time to time such general and uniform rules and regulations and issue such orders and instructions, not inconsistent with law, as may be deemed necessary respecting the manner of the exercise of the powers and discharge of the duties of any and all taxing officials; and
 (2) Require compliance with the commission's forms, rules, regulations, orders, and instructions.
A.C.A. § 26-24-107.
The above-quoted statutory provisions clearly grant the Assessment Coordination Department wide discretion in determining the specific manner in which the tax laws of the state are to be administered.
The Arkansas Supreme Court has consistently held that an interpretation given to a statute by the agency charged with its execution is highly persuasive, and while it is not conclusive, neither should it be overturned unless it is clearly wrong. Ford v. Keith, 338 Ark. 487,996 S.W.2d 20 (1999); Arkansas State Med. Bd. v. Bolding, 324 Ark. 238,920 S.W.2d 825 (1996); Douglass v. Dynamic Enterprises, Inc., 315 Ark. 575,869 S.W.2d 14 (1994); Junction City Sch. Dist. v. Alphin, 313 Ark. 456,855 S.W.2d 316 (1993); Brimer v. Arkansas Contractors Licensing Bd.,312 Ark. 401, 405, 849 S.W.2d 948 (1993); Pledger v. Boyd, 304 Ark. 91,799 S.W.2d 807 (1990); Arkansas Department of Human Services v. Green Acres Nursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988); Arkansas Contractors Licensing Bd. v. Butler Const. Co., Inc. of Barling,295 Ark. 223, 748 S.W.2d 129 (1988); Ragland v. Arkansas Writers' Project, Inc., 287 Ark. 155, 697 S.W.2d 94 (1985), reh denied, 287 Ark. 155,698 S.W.2d 802; Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983).
On the basis of these precedents, I conclude that the Assessment Coordination Department has full authority to choose a specific method of calculating the rollback provision of Amendment 59 that would serve both the spirit and the letter of Amendment 59, of its implementing legislation, and of Act 1185 of 1999.
Question 2 — If the answer to Question 1 is affirmative, and in theabsence of existing clear legislative direction, does the AssessmentCoordination Department have the responsibility and authority to devise auniform method of application of the two provisions that will be mostconsistent with the intent and letter of each provision, even though notin perfect compliance?
It is my opinion, for the reasons stated in response to Question 1, that the Assessment Coordination Department does have the authority to devise a method of administering Amendment 59 (and its implementing legislation) and Act 1185 of 1999 that will be most consistent with the intent and letter of these laws.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which
I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] I do not interpret your question to be asking whether Amendment 59 and Act 1185 conflict with one another. In any event, it is my opinion that Amendment 59 (and its implementing legislation) and Act 1185 do not conflict. That is, it is my opinion that compliance with one would not necessarily cause violation of either of the others. See Op. Att'y Gen. No. 99-234.
[2] For example, A.C.A. § 26-26-404 sets forth a form that is required to be completed by each taxing unit in the base year of a countywide reassessment. This form, as set forth in the statute, fills in the blank for the item "Maximum increase option" with the figure "10%." This form was drafted before Act 1185's three-year incremental increases in property values. The fact that the statute requires this amount to be placed on the form might indicate that the Department does not have the discretion to allow a different amount in the context of a three-year incremental increase. It is my opinion that this would be an over-restrictive interpretation of A.C.A. § 26-26-402.
[3] The Assessment Coordination Department was originally a division of the Arkansas Public Service Commission. See A.C.A. § 26-24-101. That Division was separated from the APSC by Act 436 of 1997 and now operates as a principle department, rather than as an arm of the APSC.Act 436 of 1997 states:
 (a) The Assessment Coordination Division of the Public Service Commission is transferred by a Type 2 transfer as provided in § 25-2-105 to the Assessment Coordination Department.
 (b) For purposes of this subchapter, the Assessment Coordination Department shall be considered a principal department established by Act 38 of 1971.
Acts 1997, No. 436, § 2.
The reference in A.C.A. § 26-24-102 can therefore reasonably be interpreted as a reference to the Assessment Coordination Department.
[4] See Footnote 3, supra.
[5] See Footnote 3, supra.