Mr. Richard Weiss, Director Arkansas Department of Finance and Administration 1509 W. 7th Street, Box 3278 Little Rock, AR 72103-3278
Dear Mr. Weiss:
You have presented the following questions for my opinion:
 (1) Is a veteran (as that term is defined in A.C.A. § 21-3-302(b)), by virtue of possessing that status, automatically entitled to an employment interview with the state agency or institution of higher education to which he or she has applied?
 (2) How can a state agency or institution of higher education comply with A.C.A. § 21-3-302(d)(2)? Please provide concrete examples.
RESPONSE
Question 1 — Is a veteran (as that term is defined in A.C.A. §21-3-302(b)), by virtue of possessing that status, automatically entitledto an employment interview with the state agency or institution of highereducation to which he or she has applied?
It is my opinion that a veteran (as defined in A.C.A. § 21-3-302(b)) who has applied for a position that is subject to the Veterans Preference Law (A.C.A. § 21-3-301 et seq.), is not "automatically" entitled to a job interview for that position. The Veterans Preference Law requires that certain qualifying veterans be given "preference" in the hiring process. Although the language of the Veterans Preference Law is somewhat unclear in its explanation of the "preference" it requires, that language appears to envision that the required "preference," which will be described more fully below, is not available to all veterans, simply by virtue of their status as veterans. Not all veterans are entitled to "preference," or to be interviewed.
The pertinent provision of the Veterans Preference Law states:
 (c) In every department or agency of state government or institution of higher education with employee positions subject to the Uniform Classification and Compensation Act, a veteran who voluntarily submits official proof of his or her status as a veteran, disabled veteran, or a surviving spouse of a deceased veteran who remains unmarried at the time the preference is sought, and who are citizens and residents of this state, shall be entitled to employment preference in positions over other applicants, after meeting substantially equal qualifications.
A.C.A. § 21-3-302(c) (as amended by Acts 2003, No. 653).
The Veterans Preference Law does not define the terms "preference" or "substantially equal qualifications," as used in the above quoted section. However, the language of that law is sufficiently clear to indicate that meeting "substantially equal qualifications" is a prerequisite to receiving "preference;" a veteran is not given "preference" unless he or she has already been deemed to possess "substantially equal qualifications" as the other applicants. The law describes the process by which an applicant for a position is deemed to have met "substantially equal qualifications" as follows:
 (d)(1) If there is an examination, evaluation, or similar instrument given for the purpose of establishing an interview or employment list for such public sector jobs, and a person entitled to preference attains a passing grade thereon, he or she shall have five (5) points added to his or her final earned rating if the examination, evaluation, or similar instrument is subject to numerical scoring.
 (2) If the examination, evaluation, or similar instrument is not subject to numerical scoring, the selection authority must be able to demonstrate how veterans preference was arrived at in the selection process.
 (3) A veteran who established by the records of the United States Department of Veterans Affairs the existence of a service-connected disability or a veteran who is over fifty-five (55) years old and is disabled and is entitled to a pension or compensation under existing laws, or the spouse of such veteran, whose disability disqualifies him or her for appointment, shall have ten (10) points instead of five (5) points added to his or her final earned rating on the examination, evaluation, or similar instrument.
 (e) The qualified veteran's status shall be considered on questions of promotion and retention of employees according to § 21-3-304.
 (f) The names of candidates who have qualified in an examination, evaluation, or similar instrument given for the purpose of establishing an interview or employment list shall be entered on an appropriate register or list of eligibles in the following order:
 (1) Names of ten-point-preference eligibles shall be placed at the head of the register or applicant list of persons certified as having equal eligibility points;
 (2) Names of five-point-preference eligibles shall be placed at the head of the register or applicant list of persons certified as having equal eligibility points; and
 (3) Names of all other eligibles who do not have preference as provided in this section shall be placed on the register or applicant list in accordance with their ranking of eligibility points.
 (g) The persons entitled to preference shall not be disqualified from holding any position on account of age or by reason of any physical disability, provided that such age or disability does not render the person incapable to perform properly the duties of the position for which he or she applied for.
 (h) Nothing in this section shall be construed to apply to the position of elective or political appointees in any department, agency, or institution of higher education or to any person holding a strictly confidential administrative or secretarial position in relation to the appointing officer.
A.C.A. § 21-3-302 (as amended by Acts 2003, No. 653).
The language of the above quoted procedural requirements appears to envision that prospective employers will use some means (examination, evaluation, or other instrument) of making a preliminary determination of whether veterans possess substantially equal qualifications as other applicants for the position in question. The law appears to further envision that a veteran who passes this preliminary evaluation process is deemed to possess "substantially equal qualifications." Veterans who pass the preliminary evaluation process are entitled to have their scores increased by either five points or ten points, depending upon their situation, as described in the statute.
Finally, these requirements appear to envision that either an interview list or an employment list will be formulated as a result of this preliminary determination. I interpret these requirements to dictate that veterans who have passed the preliminary evaluation and are therefore deemed to possess substantially equal qualifications as the other applicants are placed on the interview or employment list in accordance with their score as increased by the additional five or ten points that have been granted. I further interpret these requirements to dictate that if a veteran whose score has been increased in this manner has the same score as a non-veteran, the veteran will be placed above the non-veteran on the interview or employment list. It is in this way that veterans are given preference over other applicants. Those who do not pass the preliminary evaluation are placed on this list in accordance with their actual scores. Those veterans will have no points added to their scores.
The employer's internal hiring processes may or may not entail interviewing every applicant on the list. For example, the employer may choose to interview the top three applicants on the list. Some veterans, either with or without the "preference," may not have a score that would rank high enough on the list to be interviewed.
Thus, the "preference" that qualified veterans are entitled to receive under the Veterans Preference Law is the right to have points added to the score earned on the preliminary evaluation, and to be placed on the interview or employment list above non-veterans who have the same score. Because veterans must qualify for this preference, I must conclude that veterans are not, simply by virtue of their status as veterans (as that term is defined in A.C.A. § 21-3-302(b)), automatically entitled to be interviewed for the positions for which they apply.
Question 2 — How can a state agency or institution of higher educationcomply with A.C.A. § 21-3-302(d)(2)? Please provide concrete examples.
It is my opinion that state law does not address this question. That is, state law does not specify a particular required procedure by which state agencies or institutions of higher education must comply with A.C.A. §21-3-302(d)(2). In my opinion, the formulation of a system of compliance is left largely to the discretion of those entities.
The provision in question states:
 (d)(1) If there is an examination, evaluation, or similar instrument given for the purpose of establishing an interview or employment list for such public sector jobs, and a person entitled to preference attains a passing grade thereon, he or she shall have five (5) points added to his or her final earned rating if the examination, evaluation, or similar instrument is subject to numerical scoring.
 (2) If the examination, evaluation, or similar instrument is not subject to numerical scoring, the selection authority must be able to demonstrate how veterans preference was arrived at in the selection process.
A.C.A. § 21-3-302(d)(1) and (2) (emphasis added).
The Veterans Preference Law does not provide any specific guidance for compliance with the above emphasized provision. However, the language of this provision is sufficiently clear to indicate the desired result: in the absence of a numerical scoring system, employers must develop some other system for determining the cases in which veterans will be given preference in hiring, and for demonstrating why particular veterans were not given such preference. I believe that if an employer's system were challenged, the courts would uphold that employer's system unless it was arbitrary and unreasonable. I base this belief on the court's traditional practice of granting deference to an agency's interpretation of a statute that the agency is charged with upholding, except in cases where that interpretation is clearly wrong. Death Permanent Total Disability v.Brewer, 76 Ark. App. 348, 65 S.W.3d 463 (2002); Cyphers v. United ParcelService, 68 Ark. App. 62, 3 S.W.3d 698 (1999); Little Rock Cleaning Sys.Inc. v. Weiss, 326 Ark. 1007, 935 S.W.2d 268 (1996); Douglass v. DynamicEnters., Inc., 315 Ark. 575, 869 S.W.2d 14 (1994). Because the Veterans Preference Law does not provide specific guidance as to compliance with A.C.A. § 21-3-302(d)(2), the law appears to confer upon the various state agencies and institutions the responsibility of upholding this provision by formulating an internal system that is consistent with the desired goals of the Veterans Preference Law.
The legislature may have taken this approach because of the wide variety of employment settings, and the resulting wide variety of systems that may be appropriate and effective in complying with this provision. I can envision that a variety of systems for accomplishing the goals of the Veterans Preference Law could be reasonable and sufficient. For this reason, I must decline to attempt to formulate, in this abstract context, the parameters for compliance with the provision in question. Each agency and institution should work with its counsel to assure that its selection procedure is in compliance with all state and federal law.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which
I hereby approve.
Sincerely,
MIKE BEEBE Attorney General