The Honorable Gene Jeffress State Senator 1483 Ouachita 47 Louann, Arkansas 71751-8761
Dear Senator Jeffress:
I am writing in response to your request for an opinion regarding the following questions:
 1. Would a city museum of history qualify as a "tourist-oriented facility" as defined in A.C.A. 26-75-606(b)(1)(A)?
 2. If it does meet the definition, is the city government required to have an ownership interest in the museum in order for advertising and promotion funds to be used for operation of the facility?
 3. Must the city government have an ownership interest so that A P funds may be used for construction, reconstruction, repair, maintenance, improvement, and equipping of a city museum?
 4. May the city government use advertising and promotion funds for its acquisition of a facility so as to provide a museum of history?
RESPONSE
With respect to your first question, although a city museum of history would appear to qualify as a "tourist oriented facility" as defined in A.C.A. § 26-75-606(b)(1)(A), only the city's advertising and promotion committee could make this determination. With respect to your second question, it is unclear whether a city museum of history might qualify as a "recreational facility" in the sense of that *Page 2 
term as used in A.C.A. § 26-75-606(b)(2), which imposes a requirement that a city have an ownership interest in such a facility before devoting A P funds to its construction or operation. Given the confusion on this score, absent legislative clarification, I am unable to answer your second and third questions. I will note, however, that a city's directly funding a privately owned project by grant, as opposed to by a contract serving a clear public purpose, might offend the provisions of Ark. Const. art. 12, § 5. In my opinion, the answer to your fourth question is "yes."
Question 1: Would a city museum of history qualify as a"tourist-oriented facility" as defined in A.C.A.26-75-606(b)(1)(A)?
In my opinion a city's advertising and promotion ("A P) commission, which is statutorily charged with making this determination, might reasonably conclude that a city museum of history qualifies as a "tourist-oriented facility," although the statutory and constitutional questions addressed in my response to your second question would remain regarding the propriety of the city's simply giving tax proceeds to the facility if it were not city-owned.
Section 26-75-606 of the Arkansas Code (Supp. 2007) provides in pertinent part:
 (a)(1)(A) In the manner as shall be determined by the municipal advertising and promotion commission, all funds credited to the city advertising and promotion fund pursuant to this subchapter shall be used for the:
 (i) Advertising and promoting of the city and its environs;
 * * * (2)(A) The commission is the body that determines the use of the city advertising and promotion fund.
 * * * (b)(1)(A) Any city of the first class that may levy and does levy a tax pursuant to this subchapter may use or pledge all or any part of the revenues derived from the tax for the purposes prescribed in this subchapter or for the operation of tourist-oriented facilities, *Page 3 
 including, but not limited to, theme parks and other family entertainment facilities or for the retirement of bonds issued for the establishment and operation of other tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities.
 (B) These revenues shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter.[1]
 (2) Funds credited to the city advertising and promotion fund pursuant to this subchapter may be used, spent, or pledged by the commission, in addition to all other purposes prescribed in this subchapter, on and for the construction, reconstruction, repair, maintenance, improvement, equipping, and operation of public recreation facilities in the city or the county where the city is located if the city owns an interest in the center or facility, including, but not limited to, facilities constituting city parks and also for the payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter in the manner as shall be determined by the commission for the purpose of such payment.
 (c)(1) All local taxes levied as authorized in § 26-75-602(a) shall be credited to the city advertising and promotion fund and shall be used for the purposes described in subsections (a) and (b) of this section.
 (2) The taxes shall not be used:
 (A) For general capital improvements within the city or county;
 (B) For the costs associated with the general operation of the city or county; or *Page 4 
 (C) For general subsidy of any civic group or the chamber of commerce.
 (3) However, the commission may contract with such groups to provide to the commission actual services that are connected with tourism events or conventions.
 (4) The authorization and limitations contained in this subsection shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions while not allowing such special revenues to be utilized for expenditures that are normally paid from general revenues of the city.
(Emphases added.)
Section 26-75-606 authorizes different pertinent varieties of expenditures in different subsections. Subsection (b)(1) authorizes funding "tourist-oriented facilities." Subsection (b)(2) additionally authorizes funding "public recreation facilities," so long as the city has an ownership interest in the property. Subsection (c)(2)(C) expressly prohibits using advertising and promotion funds to subsidize "civic groups."
Although only the city's advertising and promotion ("A P") commission could make the factual determination of whether a city museum of history might qualify as a "tourist-oriented facility" under the provisions of A.C.A. § 26-75-606(b)(1)(A) (Supp. 2007), thereby possibly supporting the use of A P funds to operate the facility, it seems logical to conclude that a city museum of history would fall under this rubric. See, e.g., A.C.A. § 15-5-103(24(A) (Supp. 2007), contained within the Arkansas Development Finance Authority Act, A.C.A. §§ 15-5-101et seq., 15-5-201 et seq., and 15-5-301 et seq. (Repl. 2003 Supp. 2007), (defining "tourism enterprise" in part as "[c]ultural and historic sites, . . . and cultural or educational centers").
The commission's decision in this regard would be accorded great deference upon review. As my predecessor pointed out in Opinion No.2002-310:
 [T]he advertising and promotion commission has wide discretion in determining factually whether a particular use of advertising and *Page 5 
promotion funds falls within the permissible uses thereof as stated in A.C.A. § 26-75-606. See, e.g., Ops. Att'y Gen. Nos. 2001-031; 98-112; 97-259; 96-383. The Arkansas courts have consistently held that a body's interpretation of a statute that it is charged with administering will be given considerable deference and will not be overturned unless it is clearly wrong. See, e.g., Death Permanent Total Disability v. Brewer, 76 Ark. App. 348, 65 S.W.3d 463 (2002); Yamaha Motor Corp. v. Richard's Honda Yamaha, 344 Ark. 44, 38 S.W.3d 356 (2001); Cyphers v. United Parcel Service, 68 Ark. App. 62, 3 S.W.3d 698 (1999); Little Rock Cleaning Sys. Inc. v. Weiss, 326 Ark. 1007, 935 S.W.2d 268
(1996); Douglass v. Dynamic Enters., Inc., 315 Ark. 575, 869 S.W.2d 14 (1994).
Accord Opinion Att'y Gen. No. 2007-221.
Question 2: If it does meet the definition, is the city governmentrequired to have an ownership interest in the museum in order foradvertising and promotion funds to be used for operation of thefacility?
The statutory law is not entirely clear with respect to a city's directly granting tax revenues to a privately owned facility. As discussed below, any such direct grant might invite constitutional objection as offending the provisions of Ark. Const. art. 12, § 5. In my opinion, no provision of statutory or constitutional law would preclude a city from using A P funds as consideration for a private entity's operating a city museum of history.
As noted above, without imposing any requirement that the city have an ownership interest in a tourist-oriented facility, A.C.A. §26-75-606(b)(1)(A) authorizes using A P funds to finance the operations of such a facility. Your question also raises the issue, however, of whether the museum might be characterized as a "recreational facility" as that term is used in A.C.A. § 26-75-606(b)(2), thereby possibly foreclosing the commission from expending funds on the facility unless the city has an ownership interest therein.[2] It is unclear whether *Page 6 
the provisions of A.C.A. § 26-75-606(b)(2) should be read as a qualification to the provisions of A.C.A. § 26-75-606(b)(1)(A), which without any apparent further conditions authorizes an A P commission to commit its funds to the operation of or to make bond repayments relating to any "tourist-oriented" facility. Specifically, A.C.A. §26-75-606(b)(2) conditions using A P funds for the construction, maintenance or operation of "public recreation facilities" only upon the city's owning "an interest in the center or facility."[3] The Code fails to distinguish between a "tourist-oriented facility," on the one hand, and a "public recreation facility," on the other. One might logically assume that in at least some instances a "public recreation facility" would also qualify as a "tourist-oriented facility," although "public recreation," as in a neighborhood swimming pool, admittedly may in certain instances have an all but exclusively local focus. In any event, A.C.A. § 26-75-606 seems to draw a distinction between the two, apparently authorizing an A P commission to provide operational or bond-repayment funds for a "tourist-oriented facility" irrespective of ownership, while conditioning an A P commission's authority to fund a "public recreation facility" upon the city's having an ownership interest in the property. I will note, however, that visiting a museum would appear to be consistent with the following definitions of the term "recreation":
 1. refreshment by means of some pastime, agreeable exercise, or the like. 2. a pastime, diversion, exercise, or other resource affording relaxation and enjoyment.
Random House Webster's Unabridged Dictionary (2d ed. 1999). In the absence of legislative clarification, I cannot opine whether an A P commission may by statute provide operational funds for a "tourist-oriented facility" that is also a "public recreation facility" when the city has no ownership interest in the property. Legislative clarification appears warranted.
In addition, I feel obliged to note that the confusion regarding any municipal ownership requirement in the facility may be compounded by a potential constitutional issue. As discussed at length in the attached Op. Att'y Gen. No. 1999-408, article 12, § 5 of the Arkansas Constitution precludes municipalities from directly donating tax revenues to private entities regardless of how exalted *Page 7 
the purposes served by those entities might be.[4] Any direct transfer of funds other than by contract to a privately owned city museum might consequently be subject to constitutional objection. However, as further noted in my predecessor's opinion, nothing precludes a city from contracting with private entities to provide services that advance a public purpose. In addressing this constitutional issue, a reviewing court would be guided by the following:
 Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618
(1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. McLeod v. Santa Fe Trail Transp. Co., 205 Ark. 225, 168 S.W.2d 413 (1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993).
Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001). Moreover, the legislature has the absolute power to legislate, unless prohibited from doing so by the constitution, either expressly or by necessary implication. Black v. Cockrill, 239 Ark. 367, 369, 389 S.W.2d 881
(1965). However, notwithstanding the foregoing, it is well established that constitutional provisions, including amendments, take precedence over any law passed by the legislature. Gravett v. Villines,314 Ark. 320, 326, 862 S.W.2d 260 (1993).
In short, then, the statutory law is unclear as to whether a city that lacks an ownership interest in a facility may expend A P funds on that facility if it qualifies as both "tourist-oriented" and "recreational." Moreover, as a matter of *Page 8 
constitutional law, I strongly doubt that a city could donate A P funds to a privately owned facility that falls within either category.
Question 3: Must the city government have an ownership interest sothat A P funds may be used for construction, reconstruction, repair,maintenance, improvement, and equipping of a city museum?
Subsection 26-75-606(b)(2) closely tracks the language of your question in qualifiedly authorizing the use of A P revenues "for the construction, reconstruction, repair, maintenance, improvement, equipping, and operation of public recreation facilities in the city . . . " (emphasis added). Your question omits the highlighted language "and operation" (language that tracks that used in subsection (b)(1)(A) with respect to "tourist oriented facilities"), meaning that you are here focused only upon whether a city must have an ownership interest in a city museum in order to devote A P revenues to purely capital expenditures. Stated differently, you appear to be asking whether, even if subsection (b)(1)(A) might authorize operation of the museum using A P funds absent any ownership in the facility by the city, subsection (b)(2) would nevertheless require such city ownership as a condition for using A P funds to finance capital expenditures.
Unfortunately, given the confusion in the statute, I cannot offer a direct opinion on your question. As suggested in my previous answers, I do not believe the statute will allow of any such neat distinction between the two subsections mentioned in the previous paragraph. As noted above, A.C.A. § 26-75-606(b)(1)(A) admittedly and without qualification approves expending A P funds for the "operation of tourist-oriented facilities" (emphasis added). Although it might be argued that the highlighted term authorizes only a range of financing narrower than use "for construction, reconstruction, repair, maintenance, improvement and equipping of a city museum," I am struck by the fact that the statute further authorizes the use of A P funds to retire debt "issued for the establishment and operation of other tourist-oriented facilities" — a phrasing that suggests that the legislature intended to authorize the use of such funds through the use of bonds for tourist-oriented capital construction as well as facilities operation.
Whatever the scope of A.C.A. § 26-75-606(b)(1)(A) read in isolation, I remain faced with the dilemma discussed above — namely, whether to classify a city museum as a "tourist-oriented facility," a "public recreation facility" or both, leaving open the question of what city-ownership requirement, if any, might be statutorily mandated for any given project related to a city museum. Again, in the *Page 9 
absence of legislative clarification on this issue, I am unable unambiguously to answer your question. Moreover, your question clearly raises the constitutional issue discussed in my response to your second question.
Question 4: May the city government use advertising and promotionfunds for its acquisition of a facility so as to provide a museum ofhistory?
In my opinion, the answer to this question is "yes."
If, as you suggest, the city would have title to the property, the provision in A.C.A. § 26-75-606(b)(2) proscribing expending A P funds on projects in which the city does not have at least a partial ownership interest would not apply. Moreover, A.C.A. § 26-75-606(a)(3)(A), which was enacted pursuant to Acts 2007, No. 390, § 1, expressly authorizes and A P commission to "own, operate, sell, lease, contract, or otherwise deal in or dispose of real property, buildings, improvements, or facilities of any nature in accordance with this subchapter."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Notwithstanding this provision, the Arkansas Constitution requires that the voters approve any use of tax revenues to retire bonds.See Ark. Const. amend. 62. (By contrast, Ark. Const. amend. 65
authorizes the issuance of revenue bonds without a vote of the people when only the revenues generated by a financed project are pledged as security.) In accordance with the requirements of Amendment 62, A.C.A. § 26-75-604(c) (Repl. 1997) requires that the electors expressly approve any pledge of hamburger tax revenues to the repayment of bonds issued to finance a particular project.
[2] As noted above, A.C.A. § 26-75-606(c)(2)(A) also provides that A P funds may not be used for "general capital improvements." Although it is not entirely clear whether the construction and/or operation of a city historic museum would fall within this category, I believe the statute's focus on projects that specifically promote tourism suggests that "general capital improvements" are not ones that directly serve this end.
[3] You have not indicated either whether the museum in question yet exists or whether the city has or might eventually have an ownership interest in the facility.
[4] However, as further noted in my predecessor's opinion, nothing precludes a city from contracting with private entities to provide services that advance a public purpose.