The Honorable Rick Saunders State Representative 114 Burchwood Bay Cove Hot Springs, Arkansas 71913-6784
Dear Representative Saunders:
I am writing in response to your request for my response to the following question:
 Is it lawful for a local advertising and promotion commission, established pursuant to A.C.A. 26-75-601 et seq., to expend funds on advertising and promoting privately owned entities located within the city, including museums, hotels, motels, arenas, sporting venues, amusement parks, theaters and other attractions?
RESPONSE
In my opinion, any inquiry into the expenditure of advertising and promotion funds (generally referred to as the "hamburger tax") in a manner that might promote private interests will ultimately turn upon the facts of a particular case. To the extent that such expenditures might be characterized as primarily "advertising and promoting of the city and its environs," see A.C.A. § 26-75-606, such expenditures might be deemed lawful notwithstanding the fact that private interests might benefit thereby. However, in my opinion, any straightforward promotion of private interests using public advertising and promotion funds — which appears to be the use contemplated in your request — would invite challenge as violating the provisions of Ark. Const. arts. 12, § 5 and 16, § 1. *Page 2 
As a matter of statutory law, at issue in your request is the application of A.C.A. § 26-75-606 (Supp. 2007), which provides in pertinent part:
 (a)(1)(A) In the manner as shall be determined by the municipal advertising and promotion commission, all funds credited to the city advertising and promotion fund pursuant to this subchapter shall be used for the:
 (i) Advertising and promoting of the city and its environs;
 (ii) Construction, reconstruction, extension, equipment, improvement, maintenance, repair, and operation of a convention center;
 (iii) Operation of tourist promotion facilities in the city or the county where the city is located if the city owns an interest in the convention center or facility, and facilities necessary for, supporting, or otherwise pertaining to, a convention center; or
 (iv) Payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter.
 * * * (2)(B) Pursuant to this section, if the commission determines that funding of the arts is necessary for or supporting of its city's advertising and promotion endeavors, it may use its funds derived from the hotel and restaurant tax.
 * * * (b)(1)(A) Any city of the first class that may levy and does levy a tax pursuant to this subchapter may use or pledge all or any part of the revenues derived from the tax for the purposes prescribed in this subchapter or for the operation of tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities or for the retirement of bonds issued for the establishment and operation of other tourist-oriented facilities, *Page 3 including, but not limited to, theme parks and other family entertainment facilities.
 (B) These revenues shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter.
 (2) Funds credited to the city advertising and promotion fund pursuant to this subchapter may be used, spent, or pledged by the commission, in addition to all other purposes prescribed in this subchapter, on and for the construction, reconstruction, repair, maintenance, improvement, equipping, and operation of public recreation facilities in the city or the county where the city is located if the city owns an interest in the center or facility, including, but not limited to, facilities constituting city parks and also for the payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter in the manner as shall be determined by the commission for the purpose of such payment.
 (c)(1) All local taxes levied as authorized in § 26-75-602(a) shall be credited to the city advertising and promotion fund and shall be used for the purposes described in subsections (a) and (b) of this section.
 (2) The taxes shall not be used:
 (A) For general capital improvements within the city or county;
 (B) For the costs associated with the general operation of the city or county; or
 (C) For general subsidy of any civic group or the chamber of commerce.
 (3) However, the commission may contract with such groups to provide to the commission actual services that are connected with tourism events or conventions.
(Emphasis added.) *Page 4 
As I noted in Op. Att'y Gen. No. 2008-026:
 "AP funds" refers to tax funds credited to the city's "advertising and promotion fund." A.C.A. § 26-75-606(a)(1)(A) (Supp. 2007). Such funds must be used for, inter alia, "[a]dvertising and promoting of the city and its environs." Id. at (a)(1)(A)(i).
Section 26-75-606 authorizes different pertinent varieties of expenditures in different subsections. Subsection (b)(1) authorizes funding "tourist-oriented facilities." Subsection (b)(2) additionally authorizes funding "public recreation facilities," so long as the city has an ownership interest in the property. Subsection (c)(2)(C) expressly prohibits using advertising and promotion funds to subsidize "civic groups."
As further noted Op. Att'y Gen. No. 2006-207, a gratuitous transfer of hamburger tax revenues to a private entity would almost certainly be deemed to violate Ark. Const. art. 12, § 5, which forbids any local governmental entity to "appropriate money for, or loan its credit to, any corporation, association, institution or individual" even if the transfer might be characterized as serving a public purpose. As my immediate predecessor noted in that opinion:
 [H]amburger tax funds are public resources, and it would violate the provisions of Ark. Const. art. 12, § 5 to transfer these resources to a private entity outside the terms of a contract even if the transfer would benefit the public. See Ark. Ops. Att'y Gen. Nos. 2001-031 and 92-140 (opining that an advertising and promotion commission's grants of funds to private entities for expenditure as they see fit would violate Ark. Const. art. 12, § 5, and A.C.A. §§ 26-75-606(a)(3)(A)(iii) and (c)(1)(C)); accord Ark. Op. Att'y Gen. No. 2005-205 (opining that a municipality may never transfer public funds to a private, nonprofit corporation, no matter how exalted the motive for doing so, unless the transfer is pursuant to the terms of a valid contract). As noted in my response to your first question, an AP commission is statutorily authorized to contract with any civic *Page 5 
group or chamber of commerce for services connected with tourism and conventions, A.C.A. § 26-75-606(c)(3), and it may further at least be authorized to enter into vendor contracts.
Accord Halbert v. Helena-West Helena Industrial Development Corp.,226 Ark. 620, 624-25, 291 S.W.2d 802 (1956) (holding that a municipality may not contribute to a private, nonprofit corporation even if the corporation serves a public purpose).
An advertising and promotion commission has wide discretion in determining factually whether a particular use of advertising and promotion funds falls within the permissible uses thereof as stated in A.C.A. § 26-75-606. See, e.g., Ops. Att'y Gen. Nos. 2005-176; 2001-031; 98-112; 97-259; 96-383. The Arkansas courts have consistently held that an administrative body's interpretation of a controlling statute will be given considerable deference and will not be overturned unless it is clearly wrong. See, e.g., Death Permanent Total Disability v.Brewer, 76 Ark. App. 348, 65 S.W.3d 463 (2002); Yamaha Motor Corp. v.Richard's Honda Yamaha, 344 Ark. 44, 38 S.W.3d 356 (2001); Cyphers v.United Parcel Service, 68 Ark. App. 62, 3 S.W.3d 698 (1999); Little RockCleaning Sys. Inc. v. Weiss, 326 Ark. 1007, 935 S.W.2d 268 (1996);Douglass v. Dynamic Enters., Inc., 315 Ark. 575, 869 S.W.2d 14 (1994).
Having acknowledged the breadth of this administrative discretion, I must nevertheless again stress that Ark. Const. art. 12, § 5 flatly forbids any local governmental entity to gratuitously contribute funds to a private entity. See Op. Att'y Gen. 88-121 (opining that A P funds may not be used to directly advertise private entities). I am attaching for your information a copy of Ark. Op. Att'y Gen. No. 1999-408, in which my predecessor analyzed in detail the constitutional restrictions that apply to a local unit of government's donating its public funds. As my predecessor pointed out in his analysis, as a black-letter proposition of law, a local unit of government is precluded from donating money to a private, nonprofit corporation. I agree with my predecessor's conclusion in Opinion 88-121 that the direct advertisement of private entities using A P funds is impermissible. In my opinion, a reviewing court would in all likelihood conclude that an AP Commission's decision to advertise and promote privately owned entities amounts to an impermissible effort to direct contributions to those entities in derogation of Ark. Const. art. 12, § 5. Having said that, the key issue for an advertising and promotion commission is determining whether a promotion is a direct *Page 6 
advertisement of a private entity. Simply depicting or referencing one or more private entities in a promotion created for the broad purpose of highlighting the city and community at large does not, in my opinion, constitute a direct advertisement of those private entities. As stated, however, each proposed advertisement or promotion must be evaluated based on its own facts in order to determine whether it crosses the line into improper expenditure of public funds for the direct benefit of a private entity.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General *Page 1