Jim MORRIS et al *v.* TORCH CLUB, INC. et al

82-75                                                645 S.W.2d 938

Supreme Court of Arkansas
Opinion delivered February 7, 1983
[Rehearing denied March 21, 1983.*]

*Lady & Blackman,* by: *Frank Lady,* for appellant.

*Ike Allen Laws, P.A., Kurt Butcher, Joseph C. Kemp, Ponder & Jarboe, Huey & Vittitow,* and *R. Jack Magruder, III,* by: *Herbert C. Rule* and *Thomas P. Thrash* of the *Rose Law Firm, P.A.,* for appellees.

---

*ARNOLD, Sp. C.J., and SKOKOS and SWITZER, Sp. JJ., would grant rehearing.

*Steve Clark*, Atty. Gen., by: *Jeffrey A. Bell*, Asst. Atty. Gen., for Intervenor Steve Clark, Attorney General.

*Charles R. Singleton*, for Alcoholic Beverage Control Division.

GEORGE ROSE SMITH, Justice. The question that must eventually be decided in this case is whether Section 10 of Act 132 of 1969, Ark. Stat. Ann. § 48-1410 (Repl. 1977), which permits the serving of alcoholic beverages in private clubs in "dry" counties, is invalid because it actually amended an initiated act prohibiting the sale of liquor in a dry county, § 48-802, without receiving the two-thirds legislative vote that is required for the amendment of an initiated act. Ark. Const., Amendment 7. The trial judge compared the language of the private-club statute with the earlier initiated act and held that the one did not amend the other. We reverse and remand, because the true meaning and practical effect of the private-club statute cannot be understood or determined without the development of pertinent areas of fact. *See Ark. Motor Vehicle Commn.* v. *Cliff Peck Chevrolet*, 277 Ark. 185, 640 S.W.2d 453 (1982).

This case is a sequel to *Kemp-Bradford VFW Post 4764* v. *Wood*, 262 Ark. 168, 554 S.W.2d 344 (1977), where we held that the question now at issue could not be raised in an action for a writ of mandamus to compel the Alcoholic Beverage Control Board to cancel all private-club permits. We said, however, that other procedures were available to the plaintiffs, "the most obvious" being an action for a declaratory judgment.

The appellants, as citizens and taxpayers in a dry county, then brought this action for a judgment declaring the private-club statute to be invalid. Among the defendants are the director and the members of the Alcoholic Beverage Control Board and various representative private clubs, including country clubs, a recreation club, an American Legion post, a private club in a Holiday Inn motel, and others. In a case of this kind, in which the rival parties are in effect acting for the general public, it is our practice to be sure that all essential contentions are considered on their

merits. *See Chandler* v. *Board of Trustees of the Teacher Retirement System,* 236 Ark. 256, 365 S.W.2d 447 (1963).

Turning to the statutes, the initiated act prohibits the sale of intoxicating liquor in a dry county. § 48-802. The private-club statute provides that the preparation and serving of alcoholic beverages in a private club "under a so-called 'locker,' 'pool,' or 'revolving fund' system" shall not be deemed to be a sale or to be in violation of law. § 48-1410 (a). The section also provides for the issuance of private-club permits under rules and regulations of the Control Board. Such regulations have been issued, but their language is so general that it is impossible to tell what a pool or revolving fund system really is, nor are we aware of any recognized exact meaning for those terms. (The regulations do say that a locker system is one in which all controlled beverages on the premises are owned by the members individually, but every one of the private clubs has elected to operate on the pool or revolving fund system rather than on the locker system.)

It is a familiar rule of law that in the construction of a statute the manner in which it has long been interpreted by executive and administrative officers is to be given consideration and will not be disregarded by the courts unless it is clearly wrong. *Walnut Grove Sch. Dist. No. 6* v. *County Bd. of Education,* 204 Ark. 354, 162 S.W.2d 64 (1942). The private-club statute has been on the books for almost fourteen years. Regulations and scores of permits have been issued under the statute. Thus there is available an abundance of facts to show whether the statute, as interpreted pursuant to the legislature's direction, is in practice an amendment of the initiated act. It is possible that private clubs may operate within the law, for the initiated act does not prohibit the possession or consumption of intoxicating beverages in a dry county. Some of the appellees, however, concede that it is also possible for a private club to operate in violation of the initiated act. It is totally impossible for us to say, without knowing the facts, whether violations of the initiated act in truth exist. The appellants sought to introduce such proof, but the trial court ruled that "facts relating to the method by which the named defendants' clubs conduct their business and the methodology employed

by the Alcoholic Beverage Control Board in deciding whether or not a permit should be issued . . . for a Private Club Permit are . . . beyond the scope of this litigation." That ruling was wrong; those issues must be opened to examination. We are not attempting to act as a law enforcement agency. To the contrary, we are merely seeking to determine whether the Alcoholic Beverage Control Board, by the issuance of private-club permits, is giving the appearance of legality to establishments that are not within the permissible scope of the 1969 statute.

Reversed and remanded.

ADKISSON, C.J., and HOLT, PURTLE, and DUDLEY, JJ., not participating.

Special Justice ELDON F. COFFMAN joins in this opinion.

Special Chief Justice MORRIS S. ARNOLD and Special Justices W. P. SWITZER and THEODORE C. SKOKOS, dissent.

DARRELL HICKMAN, Justice, concurring. I agree with the decision but concur to explain to the parties where I think we are in this lawsuit. In my judgment we have held that Act 132 of 1969 does not necessarily violate Initiated Act 1 of 1942.

The initiated act prohibits the "manufacture, sale, barter, loan or giving away" of any intoxicating liquor in dry counties. It does not outlaw individuals from possessing or drinking liquor. That simply means the people in dry counties do not want liquor sold in those counties. The letter and intent of the act should be strictly enforced. It is common knowledge that the operation of some so-called private clubs would seem to violate not only the spirit but the letter of Initiated Act 1 of 1942. That was the cause of the case of *Kemp-Bradford VFW Post 4764* v. *Wood*, 262 Ark. 168, 554 S.W.2d 344 (1977). No doubt there are legitimate private clubs which do not exist solely to sell liquor and circumvent the prohibitions of Initiated Act 1 of 1942. The dispensing of liquor can be carefully regulated and limited

to members and guests only so as not to constitute a sale of intoxicating liquor to the public.

The legitimate private clubs should not be resisting the efforts of the appellants. They should join the efforts of the appellants to see that the Alcoholic Beverage Control Board strictly enforces the law to prevent the operation of "clubs" that are nothing but a ruse.

The appellants have rightfully sought, among other things, to prove that some clubs are nothing but a sham and that as a matter of fact are violating the law. They have alleged "membership" can be attained by merely registering at a hotel or motel. There may well be other relevant evidence regarding some private clubs; for example, token membership charges or the lack of any purpose except to sell liquor in a dry county. In that regard the appellants should have the right to pursue their suit. If they prove Initiated Act 1 of 1942 is being violated in spirit or in fact, then those clubs should be closed. And in my judgment the appellants can pursue such a goal by declaratory judgment. Ark. Stat. Ann. § 34-2501 (Repl. 1962). It may be a lengthy and tedious process but otherwise Initiated Act 1 of 1942 is meaningless and the will of the people will be frustrated.

MORRIS S. ARNOLD, Special Chief Justice, dissenting. In my opinion, this case comes here on an entirely improper footing. It is fundamental that even in an action for a declaratory judgment plaintiffs are required to claim and demonstrate that they have a legally protected interest which is being, or is about to be, invaded. *Andres v. First Ark. Development Finance Corp.*, 230 Ark. 594, 324 S.W.2d 97 (1959). The plaintiffs in this case have not done so. Instead, they rely solely on their status as citizens and taxpayers in a "dry" county to give themselves standing, and that is too frail a foundation on which to raise a real case. If the defendants had initiated this action, in an effort to discover whether their conduct was criminal, then the matter would be entirely different and the action might well have been properly brought. Covington, *The Declaratory Judgments Act,* 7 Ark. L. Rev. 306 at 312-13 (1953). The defendants would have an obvious sort of interest in knowing whether

their actions might subject them to prosecution. But here the plaintiffs show little more than an undifferentiated and idle curiosity about the legality of activities engaged in by people most of whom are not even their neighbors. Courts ought to decide cases, not encourage voyeurism.

Since this record presents no justiciable controversy, if there were not special circumstances, the plaintiffs' complaint ought simply to be dismissed. However, in *Kemp-Bradford VFW Post* v. *Wood,* 262 Ark. 168, 554 S.W.2d 344 (1977), this court held that the issues presented here could not be raised by petition for mandamus to the Alcoholic Beverage Control Board (A.B.C.). One of the alternative bases on which that holding proceeded had to do with the extraordinary character of mandamus: Since, the court's argument ran, a declaratory judgment action was available to try the validity of Ark. Stat. Ann. § 48-1410, the petition for mandamus was improperly brought. Although, as noted above, the propriety of a declaratory judgment action in these circumstances is dubious at best, and although its availability was only an alternative basis for the holding in *Wood,* it nevertheless seems appropriate to reach the merits of this case. The plaintiffs would at the very least be entitled to feel hard done by if we were to dismiss their complaint in the face of the assertions made in *Wood.*

Turning therefore to the merits, it appears that the abstract legal question that the plaintiffs asked to have decided was whether Ark. Stat. Ann. § 48-1410, which allows the A.B.C. to license private clubs in "dry" counties, conflicts on its face with Ark. Stat. Ann. § 48-803, an initiated act which prohibits the manufacture, sale, barter, loan, or gift of intoxicating liquor in "dry" counties. It is not necessary, in order to answer this question, to remand this case for evidence of what private clubs actually do: The meaning of § 48-1410 is entirely independent of the practices engaged in under it. In my view, there is no conflict between the relevant statutes. Since § 48-803 prohibits neither the possession nor consumption of alcoholic beverages in "dry" counties, it is entirely possible for private clubs to operate completely within the law in such counties. A simple example should suffice. If liquor is purchased in a "wet"

county by a private club as agent for its members, and that liquor is later served to them in a "dry" county, there has been in the "dry" county only possession and consumption. There has been there no sale, barter, loan, or gift. Since, therefore, the two statutes can stand together, it follows that the trial court ought to be affirmed.

By remanding this case for a determination of the actual practices of the defendant private clubs, the majority has transformed the nature of the plaintiffs' complaint. Though the matter is not completely free of doubt, it appears that what began as an action to determine the facial validity of a purported statute will now become a proceeding to determine the criminality of the actual activities of particular defendants. While this metamorphosis at least has the advantage of creating for the first time something like a real case for adjudication, it is a very peculiar kind of case indeed. In fact, it is one hitherto unknown to the common law of Arkansas. The majority today gives its sanction to something very close to a privately initiated criminal "action", the difference being that apparently the end in view is only a declaration that certain behavior has been criminal, rather than the imposition of a pecuniary or corporal penalty. There are, it is true, legal systems in which private individuals are empowered to institute criminal proceedings, but the common law long ago abandoned that idea. Certainly such a procedure has not been authorized in Arkansas since civilian legal processes were replaced by common-law institutions soon after the French and Spanish ceded their sovereignty over Louisiana in 1803. Presumably, however, one aspect of civilian criminal process, its inquisitorial character, is unavailable to the plaintiffs on remand, since their rights of discovery will be circumscribed by the Fifth Amendment to the United States Constitution.

It ought to be obvious that the proper way to determine the legality of the activities of private clubs in "dry" counties is in the context of a properly instituted criminal case where the issues can be developed and decided in light of a specific set of facts. There are numerous agencies to which the enforcement of the criminal law has been entrusted, and this court ought not to combine with these plaintiffs precipi-

tously to invent novel criminal procedures. Even if it were admitted that members of the public have, in the technical sense, an interest in the proper enforcement of the criminal law, a proposition by no means obviously correct, our legal system has for good reason delegated the vindication of that interest to public authorities. This constitutional arrangement, made long ago and for so long adhered to, ought not lightly to be swept aside. With respect, it seems to me that the majority, motivated by a desire to have an important public question decided, has acted without warrant in reaching its conclusion.

THEODORE C. SKOKOS, Special Justice, dissenting. I respectfully dissent from the opinion rendered by Mr. Justice Smith for the majority. The sole issue before this Court is whether or not Section 10 of Act 132 of 1969 expressly or implicitly amended Section 3 of Initiated Act 1 of 1942. It is my considered opinion that knowledge of how individual private clubs in dry counties operate is neither relevant nor necessary information needed by this Court to decide the issue before it. The trial court's ruling that "facts relating to the method by which the named defendants' clubs conduct their business and the methodology employed by the Alcoholic Beverage Control Board in deciding whether or not a permit should be issued . . . for a Private Club Permit are . . . beyond the scope of this litigation" should not be tampered with. The majority disagrees. It is interesting to note that the majority's rationale for reversing and remanding raises an issue of limited discovery which is not even before this Court.

Whether or not Act 132 of 1969 is in conflict with Initiated Act 1 of 1942, as it relates to dry counties and dry subdivisions, is a question of constitutional law and is ripe for a decision which should be made by this Court without further inquiry or delay.

W. P. (BILLY) SWITZER, Special Justice, dissenting. It is with regret that my duty, as I see it, requires that I dissent from the majority view to remand this case for development of additional proof of how the various defendant clubs operate their respective businesses; whether they operate in

accordance with Act 132 or they do not. In so doing, I am not unaware that dissenting opinions generate as little attention as a red-headed bastard at a family reunion.

If the method of operation of private clubs in dry counties is the business of this court, what about the private clubs that are not parties to this action and that number far exceeds the number of defendant clubs. It would seem that the operations of private clubs that are not parties to this action would be a legitimate concern of this court and to paint a complete picture that the majority declares is necessary to resolve a constitutional question.

If, from the voluminous additional record that will be furnished because of this remand, it appears that some clubs do and some do not operate in accordance with the provisions of Act 132 and the rules and regulations promulgated by the Alcoholic Beverage Control Board in aid of that Act, does the court propose to punish the just for the irresponsibilities of the unjust by using the non-conformance of some as a crutch to hold a statute unconstitutional?

The majority opinion said:

"We are not attempting to act as a law enforcement agency."

I disagree. I am strongly persuaded that the court is usurping the prerogatives and responsibilities of the Alcoholic Beverage Control Board, which was charged by the Legislature with the promulgation of rules and regulations pertaining to the operation of private clubs, to assure compliance with the provisions of the Act, and delegated the sole authority to enforce the provisions of Act 132.

If Act 132 is unconstitutional, the Legislature made it so and not the day-to-day operations of private clubs. Whether private clubs operate as they are required is a matter of enforcement, and whether we think that enforcement is good or bad is inconsequential to the constitutional question involved. There is nothing in the record before this court from which the immaterial question of enforcement

could be evaluated. I think the trial judge was correct in overruling the offer of proof on that point. It is irrelevant to the issue before us if the court has in fact renounced its role of policeman.

There is, I think, a good record in this case presenting a single issue, a constitutional issue, which is especially within the sole province of this court to determine and lay at ease. It has been presented to this court at considerable expense, time and effort by both parties and the apparently inexhaustible patience of the trial judge.

This is a highly emotional, volatile and political issue. It always is, another problem of alcohol. This is the second time this matter has been before this court. In *Kemp-Bradford VFW Post 4764* v. *Wood,* 262 Ark. 168, 554 S.W.2d 344 (1977), a divided court reversed and dismissed on the shaky ground that mandamus was not a proper remedy. This case is remanded by a divided court on equally unstable grounds. It will appear on the agenda of this court again at some future time. It is not difficult to decipher the game plan of the majority.

In my view, there is one sole overriding constitutional issue to decide and that is whether Act 132 conflicts with Initiated Act No. 1. It is a question of black or white, and not of orange or purple or shades in between. On constitutional questions the buck stops here. I think this court should have assumed that responsibility and decided this case on the merits.

I fear that the majority of my brothers have wandered from the narrow path of statutory construction into the field of legislative tinkering.

I would decide the case on the merits and I would affirm.