The Honorable Edward F. Thicksten State Representative P.O. Box 327 Alma, Arkansas 72921
Dear Representative Thicksten:
This is in response to your request for an opinion on whether the Municipal Health Benefit Fund, which is operated by the Municipal League, is subject to the jurisdiction of the Arkansas State insurance Department.
It is my opinion that the Municipal Health Benefit Fund ("Fund") is not subject to the jurisdiction of the Insurance Department, due largely to the fact that the Insurance Department itself takes this position.
The relevant statutes are A.C.A. 23-61-503 and 23-61-502. The former provides:
 Notwithstanding any other provision of law, and except as provided in this subchapter, any person, entity, multiple employer trust, or self-insured plan which is reinsured or administered by a third party administrator which provides coverage in this state for medical, surgical, chiropractic, physical therapy, speech pathology, audiology, professional mental health, dental, hospital, or optometric expenses, whether the coverage is by direct payment, reimbursement, or otherwise, shall be presumed to be subject to the jurisdiction of the State Insurance Department and shall also be subject to all other applicable provisions of this code, unless the person or other entity enumerated in this section shows that while providing the services it is subject to the jurisdiction of another agency of this State, any subdivisions thereof, or the federal government.
Section 23-61-502 lists health care plans which are exempt under the subchapter. That section exempts plans maintained 1) pursuant to a collective bargaining agreement; 2) by a tax exempt rural electric cooperative; 3) by the Arkansas Poultry Federation; and 4) by certain nonprofit vision service plans. it appears that the Municipal Health Benefit Fund does not fall under the exempt agencies. The question then turns on whether the Fund comes under the language of 23-61-503. The State Insurance Department takes the position that it does not. See generally, Opinion No. 89-034, a copy of which is enclosed.
It should be noted that if an administrative agency, such as the Insurance Department, adheres to a certain interpretation of a statute under which it operates, that interpretation will be given some weight by the courts. The principal is enunciated in 73 C.J.S. Public Administrative Law and Procedure 67 as follows:
 Administrative agencies, particularly under specific statutory authority, may, and should, interpret or construe the statutes which they are called on to administer or enforce, and they may develop guidelines in aid of such interpretation. The question of statutory interpretation, or the defining of a particular statutory term, is a function that should, in the first instance, be left to the appropriate administrative body. Administrative interpretations, although not to be given the force of statutory authority or law, are entitled to consideration and weight, particularly where they involve a contemporaneous construction. They are persuasive as an expression of the view of those experienced in the administration of the statute. Moreover, administrative interpretations may be entitled to great weight, particularly where they have been long-continued, or where they have been acquiesced in by the legislature for a long period of time. Under such conditions, administrative interpretations should not be overturned except for cogent or weighty reasons, and, ordinarily, they will be held controlling and followed unless they are clearly wrong, unreasonable, or unauthorized. [Footnotes omitted.]
See also Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983).
It is clear from the language above that the interpretation of the Insurance Department will be given at least some consideration, and perhaps weighty consideration. It is my opinion that the Department's interpretation is not unreasonable, given the particular make-up of the fund and applicable law on point.
The Fund is governed by a board of trustees appointed in a declaration of trust, which creates the Fund. Part I. of the trust provides:
 A. The Trust is created for the purpose of providing and maintaining adequate group life, accidental death and dismemberment, dependent life insurance, disability income, health and dental benefits coverage for the benefit of the member municipalities and their employees and officials.
 B. The Trustees shall effectuate this Declaration by securing group life, dependent life and accidental death and dismemberment insurance and setting up a Municipal Health Benefit Fund for medical, dental and disability income benefits. Part II. of the trust provides:
 The term "Fund" as used herein shall mean the trust estate of the Municipal Health Benefit Fund which shall consist of the policies purchased hereunder together with all experience refunds or other sums payable to the Trustees on account of such policies; all monies received by the Trustees as contributions from the member municipalities; and any other property received and held by the Trustees for uses, purposes and trusts set forth in this Declaration.
It is clear from the language of the Declaration of trust that the trustees will purchase and acquire insurance policies, presumably from regulated insurance carriers, for certain types of coverage, and will administer a "fund" composed in part from member contributions, for other types of coverage. It is conceivable that the Insurance Department view this plan as not insurance at all, but rather a trust to administer the acquisition of insurance. Additionally, it is conceivable that the Department views the "fund" as analogous to the one maintained in West Co. of La. v. Sykes, Insurance Commissioner, 257 Ark. 245, 515 S.W.2d 635
(1974), where the Arkansas Supreme Court held that a group hospital and surgical benefit plan furnished as a fringe benefit to a company's employees on an optional basis and substantially supported by employer's profits, and which was not intended to be actuarially sound, was not subject to regulation under the Insurance Code. The court quoted language from a California case which held that:
 ". . . Regardless of the noted similarities in so many of the provisions contained in the plan to those found in annuity policies regularly sold by insurers, the great dissimilarity which inheres is the total absence of profit motive — never ignored by successful insurers — compels a conclusion that the establishment and maintenance of respondent's employees' retirement plan cannot be classified as insurance business done by it in this state. Such was not its purpose and such was not its nature. . . .
257 Ark. at 249, citing California-Western St. Life Ins. Co. v. State Bd. of Eq., 151 Cal.App.2d 559, 312 P.2d 19 (1957).
Additionally, it should be noted that the fund was created pursuant to the "Interlocal Cooperation Act," (A.C.A. 25-20-101, et seq.), which allows municipalities to exercise jointly powers which could be exercised singly. It is conceivable that the exercise of the municipal power to self-insure, in a joint fashion pursuant to the act, is sufficient to exempt the fund from regulation by the Department. See Opinion No. 89-034. Moreover, this fact may, as you suggest, bring the fund within the exception stated in A.C.A. 23-61-503 for entities providing services subject to the jurisdiction of another agency of the state, or a subdivision thereof.
In light of the foregoing, it is my opinion that a court of competent jurisdiction would in all likelihood agree with the Insurance Department that the Municipal Health Benefit Fund is not subject to the jurisdiction of the Department.
The Foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.