The Honorable Sam Ledbetter State Representative 324 Charles Street Little Rock, AR 72205-4304
Dear Representative Ledbetter:
I am writing in response to your request that I reconsider Ark. Op. Att'y Gen. No. 2003-303, in which I opined that the Arkansas Public Defender Commission (the "Commission"), as opposed to the county, is responsible for reimbursing mileage expenses incurred by a public defender's office. In support of your request, you offer the following analysis:
 As I read the statutes, and based on the history of this agency [the Commission], the approach set forth in the referenced opinion is in direct conflict with the current operations of the public defender offices and directly conflicts with both the legislative history and intent surrounding the public defender's office.
 Before the State began funding public defenders, the counties paid all costs, including salaries and expenses. At some point, the State gradually began to incur a portion of the public defender expenses. In 1997, the State began paying the expenses for expert witnesses, including expert travel expenses. However, at the time the State agreed to pay expert expenses, there was not a corresponding change to the states regarding the funding for other expenses of public defender offices. In the past legislative session, the appropriation for the Public Defender Office did not include funds to cover the expenses that the counties have always been responsible for incurring. Such expenditure was neither requested nor provided as no one believed it necessary to do so.
RESPONSE
Having again reviewed the legislative history and having met with representatives of the Commission, I will qualify my previous opinion to the extent of acknowledging that the current assignment of financial responsibility to the Commission is confusing, leaving room for debate regarding the range of travel expenses the Commission, if able, is obliged to discharge. Legislative clarification is warranted.
As I noted in my previous opinion, A.C.A § 16-87-302 (Supp. 2003) provides in pertinent part:
 (a) The Arkansas Public Defender Commission shall be responsible for the payment of the following:
* * *
 (3) The payment of the costs of certain expenses, as authorized by § 16-87-212.
 (b) Each county or counties within a judicial district shall be responsible for the payment of the following:
 (1) The cost of facilities, equipment, supplies, and other office expenses necessary to the effective and efficient operation of the public defender's office; and
 (2) The compensation of additional personnel within the office of the public defender, when approved in advance by the quorum court.
 (3)(A) Whenever, in a case involving an indigent person, a judge orders an authorized payment, a copy of the order accompanied by a detailed explanation of services rendered, time spent, and expenses incurred shall be transmitted to the commission, and the commission shall set the amount of compensation.
 (B) Orders as authorized throughout this chapter shall be paid by the commission provided sufficient funds are available.
Section 16-87-212 of the Code (Supp. 2003) provides in pertinent part:
 (a)(1) The Arkansas Public Defender Commission is authorized to pay for certain expenses regarding the defense of indigents.
 (2) The expenses shall include, but shall not necessarily be limited to, fees for appointed counsel, expert witnesses, temporary investigators, testing, and travel.
 (3)(A) Whenever, in a case involving an indigent person, a judge orders an authorized payment, a copy of the order accompanied by a detailed explanation of services rendered, time spent, and expenses incurred shall be transmitted to the commission, and the commission shall set the amount of compensation.
 (B) Orders as authorized throughout this chapter shall be paid by the commission provided sufficient funds are available.
* * *
 (c) At the discretion of the commission, capital murder cases and all proceedings under the Arkansas Rules of Criminal Procedure, Rule 37.5, shall be paid entirely by the commission.
(Emphasis added.)
Considered in isolation, these two statutes may seem somewhat ambiguous in that A.C.A § 16-87-302(a) dictates that the Commission "shall be responsible for the payment" of certain travel expenses, whereas A.C.A §16-87-212 merely provides that the Commission "is authorized to pay" those expenses. The former statute appears to impose a mandatory obligation to pay such expenses, whereas the latter appears to make payment discretionary with the Commission.
However, ignoring for the moment the question of how broadly one should define the term "travel," I believe a review of the legislative history supports the conclusion that the Commission is now charged with the obligation to pay the referenced expenses so long as it has the resources to do so. The legislature enacted A.C.A § 16-87-212 pursuant toAct 1193 of 1993, which also created the Commission. Specifically, § 10 of the Act provides:
 The Commission is authorized to pay expenses regarding the defense of indigents, other than salaries, attorneys fees and regular office expenses. The expenses shall include, but shall not necessarily be limited to, fees for expert witnesses, testing, and travel. Whenever in a case involving an indigent person, a judge orders the payment of funds for the aforementioned expenses, the judge shall transmit a copy of the order to the Commission, which is authorized in its discretion to pay the funds. If the Commission declines to pay the funds, the funds shall be paid by the county wherein the crime was committed, provided that the Arkansas Supreme Court may promulgate rules for the stay of such orders in the event that they are contested.
This legislation vested the Commission with discretion to pay travel expenses or not — a discretion I gather from your factual recitation the Commission elected to exercise by not paying such fees. However, in enacting Acts 788 and 1341 in 1997, the legislature significantly narrowed that discretion. Indeed, as reflected in A.C.A § 16-87-302(a), the legislature declared that "[t]he Arkansas Public Defender Commissionshall be responsible for the payment" of various expenses, including the "travel" referenced in A.C.A § 16-87-212(a)(2).[1] (Emphasis added.) In the emergency clause of Acts 788 and 1341, the legislature further expressed its intention to shift responsibility for funding public defender's offices from the counties to the state.[2] This intention is further reflected in the identical titles of Acts 788 and 1341 of 1997: "An Act to Amend Various Sections of the Arkansas Code Annotated to Phase in the Transfer of Funding of the State Trial Court System from County Government to the State. . . ." Judging from your factual recitation, apparently in response to this mandate, the Commission began paying travel expenses for expert witnesses in 1997.
However, the issue at the heart of your request is precisely whose travel expenses the Commission is charged with defraying. In construing the applicable statutes in my previous opinion, I offered the following analysis:
 . . . I am struck by the fact that A.C.A. § 16-87-302(b), which specifies the expenses for which the county will be responsible, does not mention "travel." By contrast, A.C.A. § 16-87-302(a)(3) charges the Arkansas Public Defender Commission with the responsibility to pay the expenses authorized by A.C.A. § 16-87-212 — a category that is statutorily defined as including "travel." Accordingly, I believe the Commission, not the county, should properly be charged with defraying these expenses.
I further remarked:
 In enacting A.C.A. § 16-87-201 et seq. (Supp. 2003), the legislature established the Arkansas Public Defender Commission as a state agency to standardize at a state-wide level the operations of the public defenders' offices, including the management of their financial affairs. I believe the provisions of A.C.A. §§ 16-87-212 and -302 are consistent with this purpose in charging the Commission with the responsibility to defray the costs of travel associated with the defense of indigents.
You indicate that courts as a matter of practice do not include travel expenses incurred by a public defender's office in the order authorizing the Commission to make payment pursuant to A.C.A. § 16-87-212(a)(3)(A). In considering the significance of this practice, I am guided by the following principles expressed by one of my predecessors in Ark. Op. Att'y Gen. No. 89-097:
 . . . [I]f an administrative agency . . . adheres to a certain interpretation of a statute under which it operates, that interpretation will be given some weight by the courts. The principle is enunciated in 73 C.J.S. Public Administrative Law and Procedure 67 as follows:
 Administrative agencies, particularly under specific statutory authority, may, and should, interpret or construe the statutes which they are called on to administer or enforce, and they may develop guidelines in aid of such interpretation. The question of statutory interpretation, or the defining of a particular statutory term, is a function that should, in the first instance, be left to the appropriate administrative body. Administrative interpretations, although not to be given the force of statutory authority or law, are entitled to consideration and weight, particularly where they involve a contemporaneous construction. They are persuasive as an expression of the view of those experienced in the administration of the statute. Moreover, administrative interpretations may be entitled to great weight, particularly where they have been long-continued, or where they have been acquiesced in by the legislature for a long period of time. Under such conditions, administrative interpretations should not be overturned except for cogent or weighty reasons, and, ordinarily, they will be held controlling and followed unless they are clearly wrong, unreasonable, or unauthorized.
 [Footnotes omitted.] See also Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983).
I have no inclination to minimize this principle of deference to the interpretations of administrative agencies. However, given the uncertainty that has attended the gradual shift of the payment obligation from the counties to the Commission — a shift that has proceeded over a number of legislative sessions and that has resulted in what I perceive as a tension among legislative enactments regarding the extent of the Commission's discretion, see discussion supra — I am not inclined to accord dispositive significance to the fact that public defenders in the past have not submitted their own travel expenses to the court for payment authorization. Nevertheless, the Commission's strong position on this question is a factor I have considered in modifying the opinion I previously expressed.
You further allude in your request to the fact that § 10 ofAct 1193 of 1993, which was codified in then A.C.A. § 16-87-212, specified that the expenses to be paid by the Commission listed only expert witnesses, not the "appointed counsel" and "temporary investigators" added pursuant to Acts 788 and 1341 of 1997 — a fact you suggest supports the conclusion that the "travel" referenced in the original statute referred only to travel undertaken by the expert witnesses, not to any and all travel undertaken in defense of an indigent. I am not inclined to take issue with the proposition that "travel" in the phrase "fees for expert witnesses, testing, and travel" in the 1993 legislation should be read as referring only the travel of expert witnesses. However, I consider it neither obvious nor inevitable that the term "travel" is similarly restricted since the amendment of A.C.A § 16-87-212 by Acts 788 and 1341 of 1997.
As suggested in the foregoing discussion, Acts 788 and 1341 of 1997 effected a significant shift of responsibility for financing the public defenders' offices from the counties to the Commission. Among other things, these acts expanded the scope of the Commission's payment obligation from the discretionary payment of "fees for expert witnesses, testing, and travel" — a charge imposed in § 10(a) of Act 1193 of 1993 — to the obligatory payment of "fees for appointed counsel, expert witnesses, temporary investigators, testing, and travel" so long as the Commission has the resources to make such payment. A.C.A §16-87-212(a)(3). In my opinion, the effect of this amendment was at the very least to cast into doubt whose "travel" the Commission is charged with financing. In construing the scope of A.C.A § 16-87-212 in its current form, I cannot simply ignore the fact that the phrase "testing, and travel" no longer modifies the term "expert witnesses," instead standing alone with no clear referent. It further strikes me that the phrase "testing, and travel" cannot reasonably be read as applying only to the individuals recited in the amended statute, as it may have been read in the 1993 legislation, since "appointed counsel" and "temporary investigators" will presumably not engage in any sort of "testing." There further seems to be no logical reason why the legislature would charge the travel expenses of appointed counsel to the Commission while charging the travel expenses of staff counsel to the county. Accordingly, in my previous opinion, I construed the term "testing, and travel" as a separate category of expense that applies to any and all travel undertaken by a public defender's office in the defense of indigents — a reading that appears to avoid the just discussed syntactical inconsistencies attending a narrower reading while at the same time according with the legislature's intention to expand the Commission's financial obligations. Implicit in my previous opinion, then, was an inference that the legislature's relocation of the phrase "testing, and travel" amounted to an expansion of its scope — an inference consistent with the legislature's expressed intention to increase the state's responsibility for defraying the costs incurred by public defenders' offices.
Although I continue to believe it would be consistent with the legislature's statement of intent to read the subchapter's sole reference to "travel" in A.C.A. § 16-87-212 broadly, including the travel of all individuals associated with a public defender's office in the defense of indigents, I recognize that the legislative history and the Commission's interpretation of this statute leaves the matter in doubt.[3] I am consequently inclined to qualify my previous opinion by conceding that the scope of the term "travel" as used in A.C.A § 16-87-212 is uncertain. Legislative clarification appears warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] I should note, however, that notwithstanding this directive, which is contained in § 12 of Acts 788 and 1341, in § 22 of these acts the legislature amended A.C.A § 16-72-212 without deleting a passage indicating that the Commission "is authorized in its discretion to pay the funds" itemized in a court order. (Emphasis added.)
[2] Specifically, the emergency clause, which is codified at A.C.A §16-10-601(b), provides:
It is . . . the intent of this act to begin to phase in the responsibility of the funding of a part of the state trial court system from county government to the state. It is, further, the intent of this act to continue and improve the reporting of information from cities and counties concerning the costs of providing the court system and the revenues produced from court costs, fees, and fines.
Act 1799 of 2001 further restricted the Commission's discretion regarding the payment of expenses. For instance, § 6 of Act 1799 amended A.C.A § 16-87-212(a)(3) to remove the Commission's discretion to pay court-authorized expenses, instead providing that "[o]rders as authorized throughout this chapter shall be paid by the commission provided sufficient funds are available."
[3] With respect to the Commission's suggestion that travel expenses should be considered an "operating expense" chargeable to the counties pursuant to A.C.A § 16-87-302(b)(1), I will note that while the term "operating expenses" is used without definition numerous times in the Code, it is twice expressly defined in unrelated contexts as including "travel." See A.C.A. §§ 16-21-2203(d)(3) and 19-4-511(d)(1)(P). I am not prepared to opine whether this means either that "travel" should naturally be considered an "operating expense," that "travel" should be so considered only if it is expressly designated as such or that "travel" may be considered an "operating expense" unless expressly classified otherwise.