The Honorable Jack Critcher State Senator #30 Trestle Court Batesville, AR 72501-3711
Dear Senator Critcher:
I am writing in response to your request for my opinion on various questions arising from the following reported facts:
 On March 3, 2005, the Department of Education (ADE) identified, and on April 11, 2005, the State Board of Education (Board) classified, the Midland School District (Midland or the district) as a district in fiscal distress (pursuant to Ark. Code Ann. § 6-20-1901 et seq.). Subsequently, Midland failed to submit an acceptable fiscal distress plan to the ADE that showed that the district would have a positive ending balance by the end of the 2005-2006 fiscal year and a proposed set of actions that result in a positive ending balance for the district for the 2006-2007 fiscal year. As a result, the ADE took over administrative control of the school district by removing the superintendent of the school and appointing an agent to administer the district on behalf of the Commissioner of Education and by removing the local school board pursuant to Ark. Code Ann. § 6-20-1909. At the February 13, 2006, Board meeting the ADE will request that the Board consider annexing Midland to another contiguous, surrounding school district.
Against this backdrop, you have posed the following questions:
 1. Is there any prohibition from private patrons donating cash funds to assist the Midland School District in eliminating any deficit in its operating expenditures and/or to remove debt obligations coming due against the district?
 2. If there is no prohibition and considering that the ADE, a state agency, now has taken over administrative control of the school district, is there any specific authority or process necessary by which the ADE must apply these cash funds to eliminate any deficit operating balances and/or eliminate any debt obligations jeopardizing the fiscal liability of the district?
RESPONSE
In my opinion, the answer to your first question is, most likely, "no": there is no statutory prohibition that would preclude a school district from receiving private donations. See A.C.A. §6-13-620(a)(12) (Supp. 2005).
I believe the answer to your second question is "no." The ADE is afforded considerable discretion under applicable state law in determining how it will marshal any and all assets, including private donations that might be available to address the fiscally distressed district's condition. The ADE will apply to the facts of this case the rules and regulations it is statutorily authorized to develop "as necessary to identify, evaluate, assist, and address school districts in financial distress." A.C.A. § 6-20-1911(a) (Supp. 2005). Regardless of how much private money is made available to the district, the ADE will still need to review all the indicators of fiscal distress recited in A.C.A. § 6-20-1904 (Supp. 2005). It is within ADE's discretion to determine (and recommend to the Board) that the donation of private funds along with other available resources demonstrates that the district is no longer in fiscal distress or that no annexation, consolidation, or reconstitution of the district is warranted.
Question 1: Is there any prohibition from private patronsdonating cash funds to assist the Midland School District ineliminating any deficit in its operating expenditures and/or toremove debt obligations coming due against the district?
In my opinion, although the Arkansas Code does not directly address the issue, I believe the answer to your question is, in all likelihood, "no," there is no such prohibition.
Various provisions of the Arkansas Code expressly authorize school districts and/or the Arkansas Board of Education on behalf of a school district to accept donations from private sources. For instance, A.C.A. § 6-16-303 (Repl. 1999) authorizes the Board of Education and school district boards to accept donations to advance early childhood and adult education. Section 6-20-706
(Repl. 1999) further authorizes the Board of Education to accept donations "for use in connection with any school lunch programs." Subsection 6-21-503(b) (Repl. 1999) also authorizes school districts to accept donations to fund recreational services.
The Arkansas Code contains no similar provision expressly authorizing school districts to accept donations in order to alleviate a condition of fiscal distress that may have prompted the Board of Education to undertake remedial action of the sort described in your factual recitation. See A.C.A. § 6-20-1909
(Supp. 2005).[1] In this regard, I will note that a number of jurisdictions expressly provide for school districts or boards of education to accept private cash donations to effect general school district purposes — including, I would presume, curing a condition of fiscal distress. See, e.g., Conn. Gen. Stat. Ann. § 10-47; Del. Code Ann. tit. 10, § 47, tit. 14, § 1056; D.C. Code Ann. § 38-907; Ga. Const. art 8, § 5, par. 6; Ill. Ann. Stat. ch. 105, paras. 5/5-21 and 5/34A-201; Ky. Rev. Stat Ann. § 16.580 (providing that the purpose for which the donation is used "shall be in harmony with the aims and general program of public education in this state"); Me. Rev. Stat Ann. tit. 20, § 1705; Mass Gen. Laws Ann. ch. 105, § 1705; Mich. Comp. Laws. Ann. §§ 380.15, 380.431a, 380.602 and 38.628; Mont. Code Ann. § 20-6-601; Nev. Rev. Stat. Ann. § 386.390; N.M. Stat. Ann. § 22-5-4; N.D. Cent. Code § 1-08-04; Ohio Rev. Code Ann. § 3313.36; Okla. Stat. Ann. tit. 70, § 5-117; Pa. Cons. Stat. Ann. § 2-216; S.D. Codified Laws Ann. §§ 13-13-10.1 and 13-14-5; Tenn. Code Ann. §49-6-2006; Tex. Educ. Code Ann. §§ 11.151 and 22.08(c)-App.; Utah Code Ann. § 53A-1-406 (authorizing private donations to the State Board of Education "on its own behalf or on behalf of an educational institution for which the board is the direct governing body"); Wis. Stat. Ann. § 188.27. In addition, a number of state statutes indirectly confirm the appropriateness of such gifts or donations by acknowledging their existence in addressing other matters. See, e.g., Cal. Educ. Code § 41030 (addressing the investment of monetary gifts to a school district); Iowa Code Ann. § 279.42 (directing that such funds be placed in trust); Minn. Stat Ann. § 471.69 (excluding gifts in the computation of average school district revenues in certain contexts); N.H. Rev. Stat. Ann. § 31:31 (directing that such funds be placed in trust); N.J. Rev. Stat. § 18A:18A-15.1 (providing that gifts made to a board of education be handled in a manner specified elsewhere in the Code); R.I. Gen. Laws § 16-3-11(12) (including within "general fund exclusions" revenue a school district has received, inter alia, from gifts); Va. Code Ann. § 22.1-126
(directing that property given to a district be vested in the school board); Wash. Rev. Code Ann. § 320.030 (defining school district "revenue" as including cash or noncash donations).
It is difficult to glean the general significance of the foregoing, other than to remark that certain states have apparently felt obliged specifically to authorize a school district's acceptance of private cash donations, whereas others have statutorily acknowledged the existence of such gifts and, in effect, ratified them by statutorily addressing their disposition. However, the Arkansas General Assembly has done neither in the context of gifts for general purposes, nor has it expressly foreclosed a school district from accepting such gifts.[2]
The question arises, then, whether the Code's silence on this issue might be read as precluding a school district from accepting donations to alleviate its fiscal crisis. This question might on first impression be seen as implicating the following principle of statutory interpretation:
 The phrase expressio unius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co., 296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390, 663 S.W.2d 930 (1946).
Gazaway v. Greene County Equalization Bd., 314 Ark. 569, 575,864 S.W.2d 233 (1993). It might be argued that the express authorization of donations in certain contexts precludes accepting donations in those contexts that the Code does not expressly designate.
However, I question whether the recited tenet of statutory construction applies in this instance. My doubts about the principle's applicability arise in part from the fact that in each of the above recited instances in which the Arkansas legislature has expressly authorized school districts to accept donations, the use to which those donations might be put cannot be described as bearing directly on the school district's core constitutional obligation to provide "a general, suitable, and efficient system of free public schools." Ark. Const. art. 14, §1. See also A.C.A. § 6-13-620(a)(12) (Supp. 2005) (directing any school board to "[do] all other things necessary and lawful for the conduct of efficient free public schools in the district"). Rather, the above referenced Arkansas statutes authorize any school district to accept donations to undertake enterprises that might best be described as ancillary to the district's constitutionally mandated, fundamental task of providing its students a "suitable and efficient" education.[3] In my opinion, the sweeping charge set forth in A.C.A. § 6-13-620(a)(12) — a statute which does no more than acknowledge a constitutional imperative to do "all things necessary and lawful" to ensure a "general suitable and efficient" system of free public education — strongly supports the common-sense proposition that if a school district finds itself in financial distress, it should be permitted to accept the financial aid of a properly concerned citizenry in order to assist it in fulfilling its constitutional mandate.
My opinion on this matter is in all respects consistent with that advanced in the venerable, if perhaps a bit dusty, case ofVestal v. Pickering, 125 Or. 553, 267 P. 821 (Or. 1928), in which the Oregon Supreme Court addressed a situation I consider materially indistinguishable from the present one. At issue inVestal was whether a school district, in the absence of any statutory authority, had the capacity to receive property by will. In concluding that a school district clearly had such capacity, the court offered the following analysis:
 Plaintiffs rely upon the well-established principle that a corporation possesses only such powers as are granted to it by its charter or general law and that the power to receive property by will has never been granted to said school district No. 1. Plaintiffs also urge the well-established principle that a school district, including said school district No. 1, is not a corporation in the sense of a private business concern or of a privately owned and controlled corporation organized under the laws of a state for the conduct of a school. Plaintiffs urge in this connection that, said school district No. 1 being a body corporate, its functions are limited to the powers especially granted by the laws of the state and the power to accept and retain property devised by will has not been granted to said school district. They also urge that notwithstanding said school district is a body corporate it is only an agency or arm of the state organized as a body corporate for the express and sole purpose of conducting the schools for the education of its citizens. It must be conceded that under our form of government the conduct of the public schools is a governmental function.
 We opine that school districts, including said school district No. 1, as a body corporate of the state, organized for the purpose of conducting the state's business of educating its citizens, would have the power to receive and retain property devised to it by will unless that power is prohibited because the school district is the state itself exercising its sovereign function of educating future citizens.
 We do not think the school districts would have authority to receive property for any other purpose than that of conducting the public school system. So long as the operations of the school district are limited to the purpose of maintaining and supporting the schools, it is not exceeding its powers by receiving a devise or legacy though the capacity of receiving such a gift is not expressly mentioned in the statute.
Id. at 556-57.
I believe this analysis in all likelihood applies to the proposed cash gift to be tendered to the Midland School District, which is likewise a "body corporate," A.C.A. § 6-13-102(a) (Repl. 1999), serving an educational purpose directly imposed upon the state pursuant to Ark. Const. art. 14, § 1. If faced with the issue, I believe a reviewing court might well conclude that a school district's unique role in fulfilling the state's constitutional duty to provide a "general, suitable and efficient" public education, id., supports expansively interpreting A.C.A. §6-13-620(12), which authorizes school districts to do all things "necessary and lawful for the conduct of efficient free public schools."
In Vestal, the court reasoned that if "the United States government, which is a government of limited powers, is capable of receiving property by will unless prohibited by statute," then, a fortiori, the states, which "possess all of the power of sovereignty not expressly taken from them by the Constitution of the United States of their own Constitutions," should likewise enjoy this privilege. 125 Or. at 555-56. The court concluded:
 It would be an anomalous condition of affairs if the state could not receive property from its own creature or exercise the power that it grants to its citizens individually where no prohibition is contained in its fundamental law or any of its statutes.
Id. at 555; accord In re Estate of Moore, 190 Or. 63, 69-70,223 P.2d 393 (1950).
I believe a reviewing court might well be inclined to adopt the reasoning set forth in Vestal. However, having ventured this opinion, I must again stress that no Arkansas court has ever declared that a school district may accept monetary gifts unless a statute declares otherwise. In this regard, I will note the following from 78 Corpus Juris Secundum, Schools and SchoolDistricts § 357, at 603 (West 1995), regarding the means by which a school district might obtain private property:
 The manner in which the school district or its board or officers may acquire and hold school property may be governed by statute. Thus, under the authority of some statutes, school property may be acquired by deed, devise, voluntary gift, or otherwise. Public school funds are also sometimes derived from bequests.
(Emphases added; footnotes omitted.) The highlighted term in this passage might be read as implying the obverse — namely, that in the absence of a statute either allowing or disallowing private donations to a school district, the district might accept such donations. This reading would be fully consistent with the court's conclusion in Vestal that a school district could receive money by will — and, by implication, I believe by gift — unless a statute prohibits it. However, legislative clarification would resolve any question on this matter.
Finally, I will note that Arkansas complies with the directives of the National Center for Educational Statistics (2003),Financial Accounting for Local and State School Systems (NCES Publication No. 2004-318), at 116 (Code 1920*: Contributions and Donations from Private Sources), in requiring that local school districts report for statistical purposes revenue arising from contributions and donations made to school districts by private entities, including, but not limited to, educational foundations, PTA/PTO organizations, campus booster clubs and private individuals. See Arkansas School and Educational Service Cooperative Financial Accounting Manual (December 2005 edition), at 104 (available at www.k12.ar.us) (last accessed on February 6, 2006). In this regard, I note that if an administrative agency adheres to a certain interpretation of a statute under which it operates, that interpretation will be given some weight by the courts. This principle is enunciated in 73 C.J.S., PublicAdministrative Law and Procedure 67 as follows:
 Administrative agencies, particularly under specific statutory authority, may, and should, interpret or construe the statutes which they are called on to administer or enforce, and they may develop guidelines in aid of such interpretation. The question of statutory interpretation, or the defining of a particular statutory term, is a function that should, in the first instance, be left to the appropriate administrative body. Administrative interpretations, although not to be given the force of statutory authority or law, are entitled to consideration and weight, particularly where they involve a contemporaneous construction. They are persuasive as an expression of the view of those experienced in the administration of the statute. Moreover, administrative interpretations may be entitled to great weight, particularly where they have been long-continued, or where they have been acquiesced in by the legislature for a long period of time. Under such conditions, administrative interpretations should not be overturned except for cogent or weighty reasons, and, ordinarily, they will be held controlling and followed unless they are clearly wrong, unreasonable, or unauthorized.
(Footnotes omitted.) See also Morris v. Torch Club,278 Ark. 285, 645 S.W.2d 938 (1983). It is my understanding that, as a matter of practice, individual school districts have in the past received and have duly reported private donations. It would appear, then, that state officials assume that private donations may be channeled to individual school districts without express legislative authorization — a conclusion I have opined may well be warranted. Nevertheless, as I have just noted, legislative clarification on this point is clearly warranted.
Question 2: If there is no prohibition and considering that theADE, a state agency, now has taken over administrative control ofthe school district, is there any specific authority or processnecessary by which the ADE must apply these cash funds toeliminate any deficit operating balances and/or eliminate anydebt obligations jeopardizing the fiscal liability of thedistrict?
In my opinion, purely as a matter of law, I believe the answer to this question is "no": no provision of law mandates that the ADE devote private donations to defraying school district debt.[4] With respect to the application of what you term "cash funds to eliminate any deficit operating balances and/or eliminate any debt obligations jeopardizing the fiscal liability of the district," I can do no more than recite the following statutory provisions:
 (a) The Department of Education shall promulgate rules and regulations as necessary to identify, evaluate, assist, and address school districts in fiscal distress.
 (b) The department may promulgate rules and regulations as necessary to administer this subchapter.
A.C.A. § 6-20-1911 (Supp. 2005). I presume that the ADE will dispose of any donations made to the district in accordance with the referenced rules and regulations.
My inquiries reveal that district residents have set a target of $400,000 in donations to contribute to the school district. Not being a finder of fact, I am unable to opine whether this sum would be sufficient to cure the district's immediate fiscal distress. I am further unable to opine how the ADE will assess the district's future financial prospects and what actions it will undertake in the wake of that assessment. I can only note that by statutory imperative the ADE will be guided in its actions by the following provisions of the Code:
 The department may petition the state board at any time for the consolidation, annexation, or reconstitution[5] of a school district in fiscal distress or take other appropriate action as allowed by this subchapter in order to secure and protect the best interest of the educational resources of the state or to provide for the best interests of students in the school district.
A.C.A. § 6-20-1908(i) (Supp. 2005).
ADE has the discretion to determine, based on the statutory criteria, that the donation of private funds and other available resources mean that no consolidation or reconstitution of the Midland School District is warranted. This conclusion follows directly from A.C.A. § 6-20-1904 (Supp. 2005), which provides:
 Any school district meeting any of the following criteria may be identified by the Department of Education to be a school district in fiscal distress upon final approval by the State Board of Education:
 (1) A declining balance determined to jeopardize the fiscal integrity of a school district;
 (2) Any act or violation determined to jeopardize the fiscal integrity of a school district, including, but not limited to:
 (A) Material failure to properly maintain school facilities;
 (B) Material violation of local, state, or federal fire, health, or safety code provisions or law;
 (C) Material violation of local, state, or federal construction code provisions or law;
 (D) Material state or federal audit exceptions or violations;
 (E) Material failure to provide timely and accurate legally required financial reports to the department, the Division of Legislative Audit, the General Assembly, or the Internal Revenue Service;
 (F) Insufficient funds to cover payroll, salary, employment benefits, or legal tax obligations;
 (G) Material failure to meet legally binding minimum teacher salary schedule obligations;
 (H) Material failure to comply with state law governing purchasing or bid requirements;
 (I) Material default on any school district debt obligation;
 (J) Material discrepancies between budgeted and actual school district expenditures;
 (K) Material failure to comply with audit requirements of § 6-20-301; or
 (L) Material failure to comply with any provision of the Arkansas Code that specifically places a school district in fiscal distress based on noncompliance; or
 (3) Any other fiscal condition of a school district deemed to have a detrimental negative impact on the continuation of educational services by that school district.
Again, not being a finder of fact, I cannot opine whether a private donation to the district would cure its financial distress. Making this determination is clearly the prerogative of the ADE, subject to the approval of the Board of Education. I can only set forth, as I have done, the statutory constraints within which the ADE will approach this issue.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] Section 6-20-1909 provides:
 (a) In addressing school districts in fiscal distress, the Department of Education may:
 (1) Require the superintendent to relinquish all administrative authority with respect to the school district;
 (2) Appoint an individual in place of the superintendent to administratively operate the school district under the supervision and approval of the Director of the Department of Education and to compensate nondepartment agents operating the school district from school district funding;
 (3) Call for the temporary suspension of the local school board;
 (4) Require the school district to operate without a local school board under the supervision of the local superintendent or an individual or panel appointed by the director;
 (5) Place the administration of the school district over to the former board or to a newly elected school board; or
 (6) Take any other action allowed by law that is deemed necessary to assist a district in removing criteria of fiscal distress.
 (b) The department may impose various reporting requirements on the school district.
 (c) The department shall monitor the fiscal operations and accounts of the school district.
 (d) The department shall require school district staff and employees to obtain fiscal instruction or training in areas of fiscal concern for the school district.
[2] The Kansas legislature, after directing that the state board of education or "any institution under the jurisdiction of the state board," might accept private donations, expressly qualified this grant of authority by providing that it did not apply to any school district. Kan. Stat. Ann. § 72-7158a. So far as I have been able to establish, this statute marks the only direct proscription in the country against a school district's accepting private cash donations to further its educational mission.
In a treatise that addresses this precise issue with respect to public institutions of higher learning, 1-5 Education Law § 5.02[3] (Matthew Bender Co. 2005), the authors summarize the prevailing law as follows:
 Educational institutions are usually expressly authorized to accept private contributions. Even absent express authority, however, it is generally held that an educational institution has the power to receive private contributions. Courts strongly favor the acquisition of property through private contributions. Objections that private contributions to public institutions are against public policy since such contributions may indirectly influence the manner in which public duties are performed have generally been rejected.
(Footnotes omitted.)
[3] I note that the Arkansas School for Mathematics, Sciences, and the Arts ("ASMSA") is statutorily authorized to receive donations, apparently to be used for any purpose consistent with its mission to educate gifted high school juniors and seniors. A.C.A. § 6-42-304(b) (Supp. 2005). However, I do not consider this express authorization for ASMSA to accept donations as implying anything about the authority of public school districts to accept donations. ASMSA is a unique variety of school that, since January 1, 2004, has been designated a "campus of the University of Arkansas." See A.C.A. §§ 6-42-301 and -302(d) (Supp. 2005). It is consequently not subject to the provisions of A.C.A. § 6-13-620(a)(12), which, as I note in my text, applies only to public school districts. Accordingly, the express statutory authorization for ASMSA to accept donations might be read as a parallel to what is implied from A.C.A. §6-13-620(a)(12) with respect to public school districts.
[4] Not being a finder of fact, I cannot address the possibility that the donations might have been conditioned upon their being put to a particular use in resolving the district's fiscal woes. In my opinion, pursuant to its discretion as defined in A.C.A. § 6-20-1909, see note 1, supra, the ADE could determine whether it should accept a gift subject to particular conditions.
[5] The Code defines the term "reconstitution" as follows:
 "Reconstitution" means the reorganization of the administrative unit or the governing school board of a school district, including, but not limited to, the replacement or removal of a current superintendent or the removal or replacement of a current school board or both[.]
A.C.A. § 6-20-1903(6) (Supp. 2005). It is possible, then, although by no means assured, that based upon what it deems the significance of the private donations to the district, the ADE might recommend to the Board an action short of annexation or consolidation. I am neither authorized nor situated to render any opinion on the advisability of any such option.