JACOBS, Jr., Plaintiff-Appellant, v. CORNELL, Admr. BUREAU OF UNEMPLOYMENT COMPENSATION, Defendant-Appellee.

Ohio Appeals, Second District, Franklin County.

No. 5366.  Decided February 10, 1956.

Clement V. Jacobs, Dayton, for plaintiff-appellant.

C. William O'Neill, Atty. Genl., John W. Hardwick, Asst. Atty. Genl., Columbus, for defendant-appellee.

(CONN, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By CONN, J.

This is an appeal from the finding and judgment entered in the Common Pleas Court against plaintiff-appellant and in favor of defendant-appellee, whereby it was determined that plaintiff was the successor in interest of the business of one Eugene Wells, doing business as the Wells Sohio Service Station, located at 2111 South Dixie Drive, Dayton, Ohio. Said finding and judgment affirmed the decision of the Administrator of the Bureau of Unemployment Compensation who had previously determined that plaintiff-appellant was the successor in interest of the business of said Wells and, therefore, must assume the "liabilities of his predecessor's account with the Bureau of Unemployment Compensation of the State of Ohio."

The pertinent and material facts are not in dispute. Briefly stated, the record discloses that in January, 1953, Eugene Wells, with the assistance of the Standard Oil Company, agreed to purchase from one Praetor, the gasoline filling station above described; that Wells did not have sufficient cash to close the deal; that a representative of the Standard Oil Company contacted plaintiff-appellant (who at that time was engaged

in the business of handling Standard Oil Products), for financial assistance to Wells to enable him to pay for the necessary merchandise and business of said station.

Two loans were arranged, one from Clement V. Jacobs, Sr., the father of the plaintiff, Clement V. Jacobs, Jr., for $3000.00, and one from the plaintiff for $750.00, each loan being evidenced by a promissory note and each note bearing date of January 19, 1953, payable in monthly installments of $100.00 and $25.00 per month, respectively.

On January 19, 1953, the Standard Oil Company gave Wells a lease for said filling station premises and, as Wells had no security for said loans, the said lessor had the lease run to Wells and also plaintiff, and for additional security, Wells entered into an "agreement of consignment," dated January 19, 1953, which, by its terms, Wells agreed that the stock of merchandise shall be placed with him as upon consignment for sale to customers at retail and further, that Wells would replace said stock by order from the Standard Oil Company and kept at a value of at least $3000.00.

The agreement further provided that in event of default, the said payees of the two notes would have the right to go upon said premises and remove said stock, etc., and resell the same. The said agreement contained a further provision that Wells agreed not to mortgage or pledge said stock, equipment, etc., to any other party.

The record further shows that Wells operated the business until January 8, 1954; that by reason of financial difficulties, Wells could not continue the business and, at said time, voluntarily turned the business and what remained of the stock and equipment over to the Standard Oil Company and it is inferrible that Wells' lease was surrendered and cancelled.

Upon taking possession, the Standard Oil Company took an inventory of the stock and equipment and credited the amount of same on the debt then owed by Wells to the company.

Thereupon the Standard Oil Company gave the plaintiff-appellant a new lease under which he took over the management and operation of the station.

The record further shows that no indebtedness of said business was assumed by plaintiff-appellant and that the Standard Oil Company did not look to him for any balance due and owing it by Wells. We quote briefly from the testimony of a representative of the Standard Oil Company, as follows:

"Q. Mr. Margraf from the standpoint of taking over a station from someone defaulting and I think he was in debt to Standard Oil Co. at the time—Gene Wells.

"A. Well yes.

"Q. How do you normally take a station back from a person who is in that position, that can't go on with it?

"A. Well if a man can't go on with a station and he hasn't taken bankruptcy we try to recoup everything we possibly can.

"Q. Well do you find somebody to go into that station?

"A. Yes.

"Q. And do you exercise control over who goes into that station?

"A. Oh Yes.

"Q. You can't just turn it over to anybody?

"A. No.

"Q. It has to be someone satisfactory to you?

"A. Yes it has to be somebody we feel will make a good operator and give service commensurate with our other stations.

"Q. I will ask you whether you knew at the time of take over that there was still money owing to Clement Jacobs?

"A. Yes.

"Q. And I will ask in consideration of that fact you considered Clement Jacobs, Jr. to take that over?

"A. That is right."

The foregoing testimony is nowhere challenged and, further, it is corroborated by plaintiff-appellant and the testimony of other witnesses.

The Administrator found that Wells had borrowed $3750.00 from plaintiff-appellant and his father, and that thereupon Wells purchased the assets of Praetor's Service Station and obtained a lease from the Standard Oil Company; that Clement V. Jacobs, Jr., signed said lease to protect said loan; that Wells and Jacobs did not form a partnership; that Wells being unable to further purchase supplies, the Standard Oil Company cancelled Wells' lease; and that Jacobs obtained a new lease from the Standard Oil Company and took over the station.

The Administrator determined that on the basis of his findings that Clement V. Jacobs, Jr. became the successor in interest under the mandatory provisions of §4141.24 R. C., "and therefore must assume the resources and liabilities of his predecessor's account with the Bureau of Unemployment Compensation of the State of Ohio."

The decision of the Administrator and its affirmance by the Common Pleas Court, when considered on the basis of the undisputed evidence, requires an examination of the statute upon which such finding and judgment are predicated and from which plaintiff-appellant has taken an appeal.

We quote from the provisions of §4141.24 R. C., relative to the transfer by the employer of his business, as follows:

"* * * If an employer transfers his business or otherwise reorganizes such business, the successor in interest shall assume the resources and liabilities of such employer's account, and continue the payment of all contributions due under §4141.01 to §4141.46, inclusive, R. C. * * *"

In express terms, the statute applies to a situation where an employer transfers his business to another or otherwise reorganizes such business, whereby such transferee upon taking over the business becomes "the successor in interest."

In the instant case, there is no evidence to support the finding that Wells, as employer, transferred his business to Jacobs, or to anyone else. Wells unfortunately failed in business and was financially unable to longer carry on. Thereupon, having lost his business, Wells voluntarily turned back to the Standard Oil Company what assets were left, and at the same time surrendered his lease.

There is no evidence that plaintiff-appellant was a direct successor

to Wells, in interest or otherwise. The relationship between Wells and Jacobs was that of debtor and creditor, and in a substantial manner. The finding that Clement V. Jacobs, Jr., was the successor in interest of Wells, whether as a creditor of Wells, or by virtue of the new lease of the premises which he obtained, together with his subseqent conduct of the filling station business, pursuant to the terms of his lease, is without any foundation on the undisputed facts in this case.

Finding and judgment of the Common Pleas Court is reversed, as being manifestly against the evidence and contrary to law. Cause remanded to the Bureau of Unemployment Compensation for execution for costs.

MILLER, PJ, HORNBECK, J, concur.