The Honorable Keven Anderson State Representative 1712 South 28th Place Rogers, Arkansas 72758-1479
Dear Representative Anderson:
I am writing in response to your request for an opinion on the scope of the term "direct and indirect successors in interest" as used in A.C.A. § 23-87-117. That statute, since 1985, has authorized the Arkansas Insurance Commissioner to impose compensation limits on agents, brokers, creditors and certain other persons for writing or handling credit life or credit disability insurance.[1] As you note, the Insurance Commissioner has issued Rule and Regulation 12 in this regard, which generally limits compensation to forty percent of the maximum premiums permitted by the Regulation. See Regulation 12, § 14.1. The applicable statute, however, also contains a "grandfather" clause, which excludes from the definition of "compensation" profits generated by certain "accounts" existing at the time the grandfather clause was adopted. In this regard, subsection (b) of A.C.A. § 23-87-117, which was added to the statute by Act 177 of 1989, provides as follows:
 (b) Provided, the term "compensation" as defined and used in this section shall not be deemed to include reinsurance premiums paid to, or underwriting profits generated by, an insurer or reinsurer owned by, controlled by, or under common control with a credit *Page 2 
insurer, an agent, broker, creditor, group of creditors, or any affiliate, associate, subsidiary, director, officer, employee, or other representative of, or for such a credit insurer, creditor, or group of creditors, on accounts in existence with such an insurer or reinsurer on January 17, 1989, that have been registered with the commissioner within twenty (20) days of July 3, 1989, in accordance with pertinent rules and regulations promulgated by the commissioner.
A.C.A. § 23-87-117(b).[2]
Another 1989 Act, adopted later in the same session of the General Assembly, added some additional language which is the subject of your question. Act 843 of 1989 added what it now subsection (c) of A.C.A. § 23-87-117. It provides as follows:
 (c) Provided further, any and all payments to all direct and indirect successors in interests
whether through purchase, gift, devise, or otherwise, related to all accounts registered under this section shall also not be deemed compensation.
(Emphasis added).
You state that a question has arisen concerning the term "direct or indirect successors in interest" as that term is used in A.C.A. §23-87-117. You have set out the following specific factual example to aid in understanding the issue and pose the question below:
 In the 1980's, a group of Arkansas automobile dealers (who were also licensed agents of credit life insurance and credit disability insurance companies) became annoyed by the fact that profits generated from their sales of credit life and credit disability *Page 3 
insurance were leaving their communities and in many cases going to large out-of-state insurance companies. Therefore, the auto dealers decided to form a credit life and credit disability reinsurance company that they would own. They formed an Arkansas holding company in which they were the shareholders. That company in turn owns an Arizona credit life and credit disability insurance company. The Arkansas holding company is referred to hereinafter as "Company."
 The Company organized under Arkansas law had a specific number of original shareholders on the relevant dates under Section (b) of A.C.A. § 23-87-117, all of whom registered with the Commissioner as required by Section (b), and were covered by the "grandfather" clause contained in Section (b).
 Two (2) of the original "grandfathered" shareholders in the Company (Shareholder "A" a n d "B") went out of business. Shareholder A sold his shares in the Company directly to a new auto dealer that had not previously owned shares in the Company (Shareholder C). Shareholder B took a different route. He sold his shares in the Company back to the Company. Subsequently, the Company reconveyed those shares to a second new shareholder that had not previously owned shares in the Company (Shareholder D).
 Question
 Are Shareholder C (who acquired his shares directly from an original grandfathered shareholder) and Shareholder D (who acquired shares that had previously been reconveyed back to the company by an original grandfathered shareholder) "direct or indirect successors in interest" entitled to the benefits of the "grandfather" clause?
RESPONSE
In my opinion the question of whether a particular person or entity is a direct or indirect successor in interest for purposes of A.C.A. §23-87-117 is one of fact not capable of resolution in the limited format of an Attorney General's opinion. As a *Page 4 
general matter, however, the Arkansas Insurance Commissioner is charged with enforcement of the relevant subchapter. That office appears to have a longstanding interpretation that while shareholders such as Shareholder "C" m a y b e eligible for the benefit of the grandfather clause as "successors in interest," shareholders such as Shareholder "D" described above, are not entitled to the benefit of the grandfather clause in A.C.A. § 23-87-117. The Commissioner's interpretation in this regard will be upheld unless it is "clearly wrong." I cannot state that it is clearly wrong.
As noted in Op. Att'y Gen. 88-177, the general rationale behind compensation limits for writing credit life and credit disability insurance was discussed in Credit Insurance Agents Association ofCalifornia, Inc. v. Payne, 128 Cal. Rptr. 881, 547 P.2d 993 (1976), wherein it was stated:
 . . . because the debtor is in an inferior bargaining position in relation to the agent — the captive market effect — insurers tend to compete by offering successively higher commissions to their agents rather than by extending better insurance coverage to debtors. Thus, in the absence of regulation of these commissions, competition among insurance carriers tends to create pressure to allocate an increasing amount of the premium paid by the debtor for commissions and a decreasing amount of the premium for insurance coverage or services rendered in connection with this coverage — the reverse competition effect.
Id. at 2, quoting 547 P.2d at 995.
As also noted in a later opinion on the same topic:
 Section 14.3(b) of Regulation 12 exists because prior to its enactment, insurance companies had a practice of opening Arizona insurance companies (Arizona requires only $150,000.00 in capital for this purpose), providing stock in such companies to their credit agents, and thereafter reinsuring the Arizona companies' business, thereby creating an increase in value of the stock held by the agents. This scheme provides agent compensation in a purposefully indirect fashion. When Regulation 12 was adopted, the desired result was to effect a cap *Page 5 
on all commissions for the purposes advanced in A.C.A. 23-87-117, but concern was expressed as to destroying existing property ownership rights in the stock discussed above, and as to the political possibility of enactment of any cap which did not preserve these interests. Thus, the grandfather clause was adopted.
Op. Att'y Gen. 88-311 at 3.
Your question is how far the grandfather clause extends under A.C.A. § 23-87-117(c), and whether it extends to shareholders in the holding company who either sell their shares directly to a new auto dealer, or who sell their shares back to the Company, which then sells the shares to a new shareholder.[3] As you note, the inquiry turns upon an interpretation of the term "direct or indirect successors in interest" as used in A.C.A. § 23-87-117(c), because such "successors" are entitled to the benefit of the grandfather clause. This term is not defined, however, by A.C.A. § 23-87-117, or by the applicable regulation.
I should note as an initial matter, that I and my predecessors have consistently referred to the Attorney General's lack of authority to supply a definition of a term that the legislature has not defined. Ops. Att'y Gen. 2007-037; 2006-028; 2005-284, 2005-020; and 2000-338, at 2,quoting Op. Att'y Gen. 1998-025 ("[t]his office has consistently taken the position that in the absence of a legislatively-or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition"). I thus cannot provide a controlling definition of "direct or indirect successors" as used in A.C.A. § 23-87-117. It is my understanding additionally, that legislative attempts at clarification of the term "direct or indirect successors in interests" to protect persons such as Shareholder "D," have been twice attempted, but have twice failed. See e.g., SB 849 of 1995 (Regular Session) (vetoed by the Governor), and SB 579 of 1997 (Regular Session) (died in House Committee at adjournment). *Page 6 
In addition, it is generally held that the question of whether a particular person or entity is a "successor" is one of fact, not law.See, e.g., Alken-Ziegler, Inc. v. Waterbury Headers Corporation, 461 Mich. 219, 600 N.W.2d (1999); Atkisson v. Manitoba Corporation, 192 A.D.2d 1077; 596 N.Y.S.2d 237 (1993); Holland v. CSXTransportation, 583 So.2d 777 (Fla. 1991); Heather Hills HomeownersAssociation v. Carolina Custom Development Corporation, Inc.,100 N.C. App. 263, 395 S.E.2d 154 (N.C.App. 1990); and Want v. Leve,574 S.W.2d 700
(Mo.App. 1978). As stated in numerous Attorney General opinions, the Attorney General is not empowered as a fact-finder in the issuance of such opinions. See Ops. Att'y Gen. 2007-192; 2007-060. Although your question sets out a general example of shareholder transactions, the resolution of the issue presented in an individual case would be one of fact. I cannot make a general conclusion that would invariably apply in each varying fact pattern.
The Insurance Commissioner has apparently not adopted a formal regulatory definition of the term "direct or indirect successors in interest." The applicable regulation, Regulation 12, § 14.3(c), merely excludes "[p]ayments made to successors in interest of the accounts described in Section 14.3 (b)" from the definition of compensation. The Commissioner has, however, issued a Bulletin stating that "This office has made it clear that a `successors in interest' scenario cannot exist in a situation where a reinsurer or insurer reacquires stock from a previously registered account and such stock is later reissued. A successor in interest is limited to a situation where the new account through purchase, gift, devise or otherwise is operating substantially the same business in the same location." Bulletin 8-96 (December 31, 1996). It is my understanding that the Insurance Commissioner has taken a consistent position over the years with regard to this matter.See, e.g., August 26, 1993 letter from Assistant Commissioner Donald K. Switzer to Union Life Insurance Company ("the intent [of Regulation 12, § 14.3(c)] is clearly that there be . . . a direct sale or conveyance of the contract right the original dealer had to the new dealer. . . ."); February 25, 1997 letter from Insurance Commissioner Mike Pickens to Attorney Mark Grobmeyer (stating that the "Department's policy has remained consistent throughout the years, to the effect that indirect successors in interest do not include replacement shareholders . . ."); March 19, 1997 letter from Deputy Commissioner Ronald L. Sheffield to Representative Ode Maddox (stating that the "Department's view has been to disallow the continuation of the grandfathered commission cap exemption in those situations in which a reinsurer reacquires a share or shares of stock from the account (agent/dealer), thereby returning it to treasury stock, or otherwise *Page 7 
becoming an asset of the reinsurance company . . ." and that "Any reissuance of that stock would not carry with it the grandfathered commission cap exemption"); and August 4, 1997 letter from Deputy Commissioner Robert D. Ridgeway, Jr. to Attorney Lee Thalheimer (stating that "if the company redeems any share or shares or stock, to be placed back into treasury stock or otherwise, and then attempts to redistribute that share or shares, the new owner of those shares would not be entitled to avail himself of the grandfather exemption . . .") .
It appears, therefore, that the Insurance Department interprets the applicable statute and its own rules so as to disallow the benefit of the grandfather clause to shareholders such as Shareholder "D" in your submitted example. The Department does not appear to have foreclosed the possibility that Shareholder "C" in your stated example could receive the benefit of the grandfather clause, although, as indicated above, that determination may nonetheless be one of fact.
The Department's long-standing interpretation in this regard will be upheld unless it is "clearly wrong." As stated in Op. Att'y Gen.2007-208, the interpretation of an administrative agency charged with the enforcement of a statute is highly persuasive, and will be upheld by the courts unless "clearly wrong." Id. citing, Macsteel, ParnellConsultants v. Ark. Ok. Gas Corp., 363 Ark. 22, 210 S.W.3d 878 (2005);McClane Co., Inc. v. Davis, 353 Ark. 539, 110 S.W.3d 251 (2003);Arkansas State Medical Board v. Bolding, 324 Ark. 238, 920 S.W.2d 825
(1996); Junction City Sch. Dist. v. Alphin, 313 Ark. 456, 855 S.W.2d 316
(1993); Pledger v. Boyd, 304 Ark. 91, 799 S.W.2d 807 (1990);Arkansas Contractors Licensing Bd. v. Butler Const. Co., Inc. ofBarling, 295 Ark. 223, 748 S.W.2d 129 (1988); and Morris v. TorchClub, 278 Ark. 285, 645 S.W.2d 938 (1983).
I cannot state that the Department's interpretation is "clearly wrong." The applicable statute, at A.C.A. § 23-87-117(c), allows the extension of the grandfather clause to a "direct or indirect successor in interest." Although the statute extends the benefit to both direct andindirect successors in interest, the person claiming the exemption must nonetheless be a "successor," albeit indirect, of the original grandfathered dealer. Again, this term is not defined. Although it is not made entirely clear from the statute, it is not "clearly wrong" in my opinion to interpret the term "indirect successor in interest" as excluding an unrelated future holder of the individual shares of stock formerly owned by the grandfathered dealer. This conclusion is reinforced by the statutory language found after the term "successors *Page 8 
in interest," "whether through purchase, gift, devise, or otherwise".[4] This indicates that the agent or dealer may create a successor in interest, among other ways, by selling, giving or devising his existing property interests to the new purchaser, donee, or devisee. The language does not as readily contemplate the mere re-sale or reissuance of stock by an insurance company to a new buyer. Arkansas corporations may not issue stock as a "gift" or "devise." See,e.g., Arkansas Constitution, art. 12, § 8 ("No private corporation shall issue stocks or bonds, except for money or property actually received, or labor done"). This reading of the statute is also consistent with the commonly understood meaning of the term "successor in interest." SeeWimberly v. Mission Broadcasting Co., 523 F.2d 1260 (10 Cir. 1975) (holding that an independent buyer of the assets of a broadcasting company, which started a somewhat different business at a new location, was not a "successor in interest" to former owner for purposes of the obligation to rehire a military veteran, and stating that "the primary inquiry to be made in determining if one is a "successor in interest" . . . is whether there is a substantially similar identity of ownership and control after transfer of the business"). See also State ex rel.Crosset Co., Inc. v. Conrad, 87 Ohio St.3d 467, 721 N.E.2d 986 (2000) (corporation that purchased the foreclosed assets of another corporation through an intermediary bank was not a "successor in interest" within meaning of rules for administering workers' compensation fund); andJacobs v. Cornell, 73 Ohio Laws Abs. 585, 139 N.E.2d 94 (1956) (gas station's operator's voluntary surrender of remaining assets and lease back to oil company, which later leased the gas station to a former creditor of first operator, did not make the subsequent operator a "successor in interest" of the first operator for purposes of unemployment compensation liability).
In addition, I cannot state, in light of the apparent intention of the "grandfather" clause, that the Department's position is "clearly wrong." As stated in Op. 2005-284, a grandfather clause is described as a "provision in a new law or regulation exempting those already in or a part of the existing system which is being regulated" and as "an exception to a restriction that allows all those already doing something to continue doing it even if they would be stopped by the new restriction." Id. at 3, citing Blacks Law Dictionary (5th
Ed. 1979) at 629. The expansion of the grandfather clause to "direct and indirect successors in interest" in A.C.A. § 23-87-117(c) appears to have been designed to allow the transfer of the grandfathered dealer's existing property right to a direct or indirect successor of the *Page 9 
dealer. It is not "clearly wrong," in my opinion, to deem a future holder of the dealer's former stock, who is otherwise unrelated to the dealer, as being outside the legislative purpose of this provision. Again, however, factual issues may play a large role in determining the issue in a given case.
As set out above, the Arkansas Insurance Commissioner has apparently taken a long-standing consistent view on the issue you raise. That interpretation will be upheld unless it is "clearly wrong." I cannot state that it is "clearly wrong." The applicable remedy of persons aggrieved by the Department's interpretation is either to prevail upon the Arkansas General Assembly to clarify the matter, or to pursue their judicial remedies.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Act 950 of 1985 gave the Commissioner this authority by amending the pre-existing statute, which was adopted as part of Chapter 19 ofAct 148 of 1959 and styled "the Model Act for the Regulation of Credit Life Insurance and Credit Disability Insurance." The previous provision itself set compensation limits as a percentage of the initial indebtedness undertaken by the insured. See Acts 1959, No. 148, § 441.
[2] You state that you believe the "Arkansas Insurance Department has made it clear that the `grandfather' clause contained in A.C.A. §23-87-117 runs in favor of the commercial `accounts' that generate the credit insurance business and excludes revenue that flows to such accounts" and that "[i]n other words, the `accounts' referred to in A.C.A. § 23-87-117 are the lenders or credit sellers that also provide the credit life or credit disability insurance."
[3] Although you do not state as such, in many instances the by-laws of private corporations require a prior offering of the sale of shares back to the corporation before they may otherwise be transferred.See, e.g., A.C.A. § 4-26-610(a)(2) (Repl. 2001) and A.C.A. §4-27-627(d)(1) (Repl. 2001).
[4] This latter language was surrounded by parentheses in the originalAct 843 of 1989, making it more clearly evident that it modifies the term "direct or indirect successors in interest."